STATE OF IOWA, Appellee, v. THEODORE SALMER, Appellant.

CRIMINAL LAW: New Trial—Matters Not in Evidence. The act of jurors in stating and reiterating to their fellow jurors, during their deliberations, as of their own personal knowledge, influential facts which are derogatory to the accused, which are wholly aside the record, and which bear strongly on a material and sharply contested issue, demands the granting of a new trial. So held where jurors had stated that they personally

knew that the accused had, for years, been under the influence
of intoxicating liquors.

HOMICIDE:    Manslaughter—Evidence—Reckless  Conduct—Intoxi-
2  cation.   On the trial of an indictment for manslaughter by
   means of reckless conduct, evidence is admissible that, at the
   time of the conduct in question, defendant was intoxicated.

CRIMINAL LAW:    New  Trial—Application—Affidavits—Compe-
3  tency.   Affidavits are competent to show that jurors were im-
   properly influenced by prejudicial evidence which was wholly
   aside the record.

*Appeal from Woodbury District Court.*—GEORGE JEPSON,
Judge.

THURSDAY, OCTOBER 18, 1917.

DEFENDANT was indicted on the charge of manslaughter,
tried and convicted, and appeals.—*Reversed.*

*Henderson, Fribourg & Hatfield,* for appellant.

*H. M. Havner,* Attorney General, *F. C. Davidson,* As-
sistant Attorney General, *O. T. Naglestad, J. W. Kindig* and
*D. G. Mullan,* for appellee.

GAYNOR, C. J.—The defendant, having
1. CRIMINAL LAW:   been indicted, tried and convicted on the
   new trial:
   matters not     charge of manslaughter, appeals to this
   in evidence.    court, and alleges:

(1)   That the evidence upon which he was convicted
was wholly insufficient to sustain the charge against him;
that the verdict is against the clear weight of the evidence;
that the evidence was not sufficient to establish the guilt of
the defendant of the charge made against him beyond a rea-
sonable doubt.

(2)   That the jury, while deliberating upon their ver-
dict, was guilty of gross misconduct.

.It was charged in the indictment that, on or about the 31st day of October, 1915, the defendant, while riding in an automobile operated by himself, on the streets of Sioux City, unlawfully and feloniously ran into and over one Vernon Frost, so injuring and wounding him that death ensued as the proximate result thereof; that the defendant at the time was running his automobile in a grossly neg-ligent and reckless manner, and at an excessive rate of speed.

Upon the trial, the State sought to show, not only that the defendant was operating the automobile in a grossly reckless and negligent manner, but that he was intoxicated at the time. There was evidence introduced on the part of the State to sustain this contention. Evidence was also in-troduced that the defendant neglected to give any warning of his approach, and that his front lights were not lighted. One witness, who was on the scene of the accident im-mediately after its occurrence, testified:

"Defendant was drinking that night. I won't say that I smelt intoxicating liquor, because I was not close enough to him. After the accident, the defendant drove the auto-mobile to the hospital with the boy in it."

Another witness testified:

"Defendant was drinking, to my notion. I smelled in-toxicating liquor on him. The car was going between 20 and 30 miles an hour. I was 10 or 15 feet east of the boy when the. automobile struck him."

The policeman who arrested the defendant testified that defendant was intoxicated when he came to the station about 10 minutes of 9 that night. He seemed to be able to walk upright and all right. He came to the station in his own car. He was arrested between 7 and 7:30 P. M. The accident occurred about 6 o'clock P. M.

There was a sharp conflict in the evidence as to the speed at which the defendant was driving that night, and as

to whether the lights were lighted. Under the evidence, it was an open question for the jury as to whether the defendant was under the influence of liquor immediately before and at the time of the accident, and a finding either way would have some support in the evidence.

Upon the first error assigned, we express no opinion. The evidence is conflicting, and defendant is entitled to the verdict of an unbiased jury, one that can and will base its finding upon the evidence produced and submitted to them on the trial, and upon nothing else.

There was no motion for a directed verdict; nor was the attention of the court challenged to the sufficiency of the evidence to justify a verdict, before the cause was submitted. It was suggested for the first time in the motion for a new trial. Since a new trial is to be granted on another ground, we express no opinion as to the sufficiency of the evidence. We refer to the evidence above only for the purpose of indicating that there was a conflict in the evidence touching the condition of the defendant as to being intoxicated or not, at the time of the accident. This question is involved in the second assignment of error, upon which a new trial was asked.

It is a matter of common knowledge that the conduct of men is greatly influenced by the condition they are in at the time they are called upon to act; that men under the influence of liquor do not possess the same cool judgment and discretion that men possess when not under its influence. When one is charged with careless, reckless conduct, or with conduct indifferent to the rights of others, a showing that he was intoxicated at the time is a very persuasive factor in leading the mind to the conclusion that the charge is well founded. Much, of course, depends upon the stage at which the party has arrived at the time. Grossly intoxicated men have scarcely any judg-

2. HOMICIDE: manslaughter: evidence: reckless conduct: intoxication.

ment and discretion, and, as a rule, little regard for the rights of other people. The same evidence that would fail to convince the mind that a sober man, a man in his sober senses, did a specific act involving a reckless disregard of the rights of others, might readily be assumed to be true in the case of one who is grossly intoxicated, or operating under the influence of liquor. The condition of the defendant as to intoxication was a matter of great probative force upon the ultimate question to be solved by the jury.

It is claimed by the State that, without sufficient light, on a public street, in the nighttime, defendant was driving his car at 30 miles an hour, and this without sounding his horn or giving any warning of his approach; that the boy was in a position to be seen by him at the time, if he had been looking; that he was not looking; that he was taking no precautions for the safety of the public; that in fact he was grossly negligent and reckless in his conduct. To emphasize this, and make it more certain to the minds of the jury, the State sought to show that the defendant was, at the time, intoxicated. Every fact upon which the State predicates its right to a verdict was controverted by the defendant. Between the conflicting evidence, the jury was called upon to determine the ultimate fact. After the jury had retired to determine their verdict, the record discloses that the following took place in the jury room, and before any verdict was arrived at:

The foreman of the jury, Beck, stated, in substance, that he knew that defendant's father had a good deal of trouble with the defendant; that he was a wild boy; had been drunk and drinking intoxicating liquors since he was a youth, and for a long time before the Frost boy was killed by his automobile; that everyone knew these facts. One Agnes, a member of the panel, said to the other jurors that the defendant had not been sober since childhood, and suggested the danger to society in permitting defendant to

run up and down the streets with high-powered automobiles. This juror also stated 'that he knew the defendant's father very well, and repeated, in substance, the statements of the foreman, Beck. Juror Cleveland, another of the panel, said:

"It would be a humane act to send the defendant to a reformatory where he might have the whiskey and drugs taken out of his system; that this is the place he will be sent, a sort of reform school, where, if he is shut in for a sufficient length of time, he can get away from the society which now has its clutches upon him, and with the large amount of property and income which he has, he might become a valuable citizen to society."

Juror Beck further said that the defendant had been carousing around and drinking liquor and getting drunk ever since he was a boy.

It appears that the jury retired for deliberation at 5 o'clock on the afternoon of Thursday, December 14th. In about half an hour, a ballot was taken which stood 8 for acquittal and 4 for conviction. The jurors were taken to supper, and returned to their room at 8 o'clock. After the jury had returned from supper, the foreman gave what he said was a correct history of the defendant's father; that the elder Salmer left Sioux City and went to Vermilion, South Dakota, where he entered a drug and boot-legging business; that the father's main business had been to make some kind of dope, which he called whiskey, and had it put in molasses cans, in order to defeat government officials, and had shipped it up and down the river in steamboats, and, among other things, repeated the statements hereinbefore set out. Thereupon another ballot was taken, and stood 7 for acquittal and 5 for conviction. These jurors again repeated their statements, to the effect that the defendant had been a drunkard from childhood. Another ballot was taken, and the jury stood 6 and 6. This ballot was taken about 10 o'clock. After breakfast on the next morning, they

returned to the jury room about 9 o'clock, when it was suggested that another ballot should be taken, and Juror Cleveland, who it is claimed led the side for conviction, said it would be of no use, and enough ballots had been taken, and the only thing that could be done was to await their discharge. About 8 o'clock on that evening, another ballot was taken, in which the result was 10 for conviction and 2 for acquittal. Foreman Beck reiterated that he knew the defendant Salmer had been drinking, and had been intoxicated for years, and ever since he was a boy.

Juror Merton says in his affidavit that, while in his opinion and judgment the evidence was entirely insufficient to satisfy him that the defendant had been drinking on that day, and while the evidence indicated that the defendant was entirely sober at that time, the statements by Jurors Agnes and Beck that they knew he had been drinking, and intoxicated ever since he was a young boy—these statements being asserted and reasserted—finally induced him to believe that Beck was stating the truth. On this he changed his vote from acquittal to conviction. Beck, in his affidavit, says, among other things:

"I told the jury that I had known this defendant when he was a little boy. I told some of them what I had read about his escapades while he lived in Sioux City."

Juror Agnes also claimed that he knew the defendant, and he says:

"I am satisfied that the jurors thought that Beck and I, who knew Salmer and his father, ought to and did know more about the defendant than they did, and thought we were in a better position to tell about this boy and the kind of a fellow he was than they, and that those jurors deferred to our opinion, and were governed largely by what we said and told them."

The showing made by the defendant was not controverted, and it is upon this showing that the defendant asks

a new trial. It is true that verdicts will not be interfered with because of arguments made by the jury in support of their conviction, based upon the evidence, nor for deductions made by them from the evidence, although these deductions may not be warranted by the evidence. Those things inhere in the verdict. But a very different question presents itself when the jurors undertake to state, of their own knowledge, facts not shown by the record, facts prejudicial to the rights of the defendant, and which, if true, tend to sustain the contention of the State.

From this it is apparent that these jurors, though probably acting from no improper motive, believing what they said was true, stated to their fellows 3. CRIMINAL facts outside the record, which, if believed LAW: new to be true, would have a very decided controlling force in impelling the mind to a conclusion that the State was right in its contention that the defendant was drunk at the time of the accident. These matters did not inhere in the verdict. It is the universal holding of courts that a showing that prejudicial evidence was introduced and considered by the jury, not in the record upon which the case was submitted to them, vitiates the verdict, and that this fact, as well as the fact that it had some influence on the result, may be shown by the affidavits of the jurymen. As said in *Douglass v. Agne,* 125 Iowa 67:

"It is firmly established that to consider any evidence other than that introduced on trial, which it is reasonably probable influenced the result, is such misconduct as to require a new trial."

It does not matter from what source this evidence comes to the knowledge of the jury; if it is considered by them in arriving at their verdict, and it is reasonably probable that it influenced the result, a new trial must be granted. The defendant is entitled to have his cause decided

upon the record made in open court. In a criminal case, he has a right to be confronted with the witnesses against him, to test the truth of any evidence offered against him by the usual methods recognized for testing truth. See *Cresswell v. Wainwright*, 154 Iowa 167, at 186; *Jolly v. Doolittle*, 169 Iowa 658.

The defendant is entitled to the judgment of twelve jurors, based solely upon the record made on the trial. That some of these jurors were influenced in arriving at their verdict by the statements made, is too plain to admit of doubt. Defendant did not, therefore, have the judgment of the twelve men impanelled to determine his cause, upon the record as actually made on the trial. The verdict secured in this way is not the verdict of the jury, in the true sense of the word. *State v. Pelser*, 182 Iowa—.

For the error pointed out, the cause must be and is —*Reversed.*

WEAVER, PRESTON and STEVENS, JJ., concur.