STATE OF IOWA, Appellee, v. J. H. THOMLINSON, Appellant.

No. 39973.

December 13, 1929.

*Arthur Springer, Seerley & Clark,* and *John Hale,* for appellant.

*John Fletcher,* Attorney-general, and *Neill Garrett,* Assistant Attorney-general, for appellee.

De Graff, J.—The primary question involved in this case is the speed with which the car was driven by the defendant at the time Ralph Drinkall was hit by said car, the impact result-ing in his immediate death. The evidence offered by the State and by the defendant on this question is in conflict, and the verdict of the jury determined this disputed fact, and there is no occasion for this court at this time to review this proposition. In this connection it may also be said that the question of contributory negligence is never a defense or excuse for crime, nor can it in any degree serve to purge of its criminal character an act otherwise constituting a public offense. *State v. Moore,* 129 Iowa 514. Nor is express intent an essential element in the crime of manslaughter. Negligence and reckless in-

difference to the lives and safety of others will supply the intent, for the purpose of criminal law. *State v. Moore,* supra.

The errors relied upon by defendant for a reversal, other than the sufficiency of the evidence to sustain the verdict, have to do with certain rulings by the trial court relative to the admission of testimony, to which we will presently refer. A brief reference to the facts may be stated.

On Sunday, April 29, 1928, the defendant Thomlinson was driving north on U. S. Highway No. 61, which runs through the west edge of the town of Mediapolis, Iowa. The time was about 7:30 P.M. His car was a Chevrolet coach. On that day, he had taken his family and one Paul Swafford to Galesburg, Illinois. Thomlinson was 32 years of age, and lived at Morning Sun, Iowa. At the time of the accident, Thomlinson was making his return trip to his home. The decedent, Drinkall, was 24 years of age. Immediately prior to the accident, Drinkall was crossing the street, and when hit by Thomlinson's car, was within one step of being off the pavement. Drinkall was hurled into the air some 10 or 15 feet, and landed in a driveway of a filling station, a short distance from the pavement. At the time of the impact, it was dusk—almost dark. The accident happened within the corporate limits of the town. There was a sign on the southern boundary of the town on this highway on the east side thereof, about 5 or 6 feet tall, and 2 to 2½ feet broad. This sign stated: "Residence District Speed limit 25 miles." There is testimony of one witness for the State that he overheard a conversation, immediately after Drinkall was hit, between the defendant and a questioner, who asked Thomlinson how fast he was going, to which answer was made: "I heard him say he was going 45 or better, and had been going faster before that." It is sufficient to state that several witnesses for the State testified as to the speed of the car and that, immediately prior to the accident, or at the time, he was driving from 40 to 45 miles an hour. One witness stated, between 45 and 50 miles. Another witness testified that he asked the defendant, "How fast were you driving, brother?" and that Thomlinson hesitated for a moment, and answered, "I think about 45 miles an hour." This answer was followed by another question, "Don't you think that is pretty fast?" to which Thomlinson replied: "Yes, I do. I can't hardly make it any less. It just depends on how the boys look at it out

there." One witness for the defendant testified that, in his best judgment, the Thomlinson car "was going about 30 miles an hour," and on cross-examination, he said:

"It would be pretty hard to tell how fast the car was going,—30 or 40 miles an hour, as near as I could tell. I don't think he was going 40 miles an hour. It would be pretty hard to tell how fast the car was going."

The defendant himself admits he saw a speed-limit sign, "maybe a little better than a quarter of a mile south of the main intersection," and that he was familiar with the highway and the street crossings in the neighborhood where the accident occurred, and had been so acquainted with them for seven years. He finally admitted: "I do not know how fast I was going." Swafford, who was riding with the defendant, testified: "I judge we were going right around 20 or 25 miles an hour when we hit him." This witness was 16 years old, and was employed by Thomlinson at the time of the accident.

We may point out at this time that the mere driving of the car by defendant at a rate of speed in violation of a city ordinance would not *per se* make the defendant guilty of manslaughter, even though the death of a person did result therefrom. *State v. Clark*, 196 Iowa 1134. But if the conduct of the defendant was utterly careless and abandoned, and in reckless disregard of the rights of other people or pedestrians upon the highway, then a conviction of manslaughter is sustainable. *People v. Schwartz*, 215 Mich. 197 (183 N. W. 723).

The trial court was not in error in failing to direct a verdict at the close of all the testimony. A fact question was presented, and we are not inclined to disturb the verdict rendered by the triers of the fact.

I. One Inghram was called as a State's witness as to the question of speed. Inghram had driven an automobile since 1910, and at the time of the accident, was employed at a filling  station, which was, as the witness testified, about 140 steps from the intersection where the accident happened. He was, therefore, about 450 feet from the intersection. He was asked to express his opinion as to the speed of the Thomlinson car at the place he observed it. An objection was interposed by defendant

that the question as to the rate of speed that the car passed "your place" was incompetent, irrelevant, and immaterial, and the witness incompetent. This was the starting point by the State in tracing the speed of Thomlinson's car as it approached the intersection. Appellant relies upon the case of *People v. Barnes,* 182 Mich. 179 (148 N. W. 400). But the question in that case involved the average speed of the automobile from the place where the appellant purchased cigars near the Union Depot until the driver began to slacken his speed. In holding that the overruling of the objection in the aforesaid case was error, the court said:

"We are of opinion that the testimony of the witness Foster as to the rate of speed of the automobile which he saw driven upon the day in question at a point six or eight blocks west of the east end of the pavement, over a mile and a half away, was too remote and vague to identify the automobile in question, and too immaterial to be submitted to a jury in the trial of a criminal case."

The Michigan case is clearly distinguishable from the case at bar on its facts and the applicable law. The witness Inghram was qualified to express an opinion, by reason of his long automobile experience, as to the rate of speed the defendant's car was driven at the time and place in question. He was not too remote as to place. See 22 Corpus Juris 570.

II. Similar objections may be noted to the testimony of one Charles Hutchcroft. He had driven an automobile for 14 years, and his business was traveling around the country, most-ly by automobile. On the evening in question, he was driving on U. S. Highway No. 61, and observed the Chevrolet car coming toward him from the south. He testified:

"When I first saw it, I was one block north of Main Street. The first I noticed the car, it swerved toward a ditch on the right-hand side of the road, then it righted, and came on towards me on the left-hand side of the road. When I saw the car swerve, I pulled to the left, and it came right along, and passed me on the left side of the road."

The question was then asked of this witness: "Did you

observe as to what speed the car was traveling when it passed you?'' There was no objection interposed to this question, and the witness answered: ''I thought it was going pretty fast.''

The prosecutor then asked the witness to express his best judgment as to miles per hour. An objection was made to this question, on the ground that the witness was not competent. Upon the overruling of same, the witness answered, ''35 or 40 miles an hour when it passed me,'' and in the same answer said:

''After it passed me, I looked back at it, and he had the car more under control, and I noticed the car was stopping. I had gone a good block down the road when it was stopped.''

It is sufficient to state that there was no error in overruling the objection on the ground of the incompetency of the witness.

III. The next complaint by appellant is that the court erred in allowing the conclusion of the witness J. H. Scott to remain in the record, as to the size of the sign at the roadside at the south-ern limit of the town of Mediapolis. Scott is an attorney, and was the mayor of said town. Upon the cross-examination, this witness was asked about the size of the sign in question. He finally testified that he had not measured it, and was then asked, ''Well, have you some idea?'' to which he replied, ''It isn't so large but what you or any other man going by it could see and read what it was.'' Motion to strike said answer was then made by defendant, and overruled. The court might well have sustained the motion, but the error, if any, was clearly without prejudice, in the light of other evidence bearing on this question.

IV. Error is predicated in the admission of certain testimony given by Edna Luckenbill. Mrs. Luckenbill was in the town of Mediapolis on the Sunday evening in question, and was at the intersection of U. S. Highway No. 61 and Main Street just about dusk. She did not see the accident, but heard the noise caused when Thomlinson's car struck Drinkall. She saw something fly through the air, and thereupon got out of her car, and went over to Mr. Drinkall's car, which was standing off the highway, in the approach to the oil station. She testified: ''After I got out of the car, I went over to Mr. Drinkall's car,

and took care of the children.'' She was then permitted to answer, over objection, how many children were in the car, and that Mrs. Drinkall was also in the car. Mrs. Luckenbill was simply testifying to the things which she observed when she approached the scene of the accident, and we discover no prejudice to the defendant, resulting therefrom. The instant case is clearly distinguishable on the facts and the law from *State v. Rutledge*, 135 Iowa 581, and *Bascom v. Hoffman*, 199 Iowa 941.

We conclude, from a careful study of the record and the errors urged by appellant, that the trial court correctly ruled the case.

The judgment entered by the trial court is affirmed.—*Affirmed.*

ALBERT, C. J., and STEVENS, MORLING, and WAGNER, JJ., concur.