STATE OF IOWA, Appellee, v. CHARLES GRAFF, Appellant.

No. 44218.

DECEMBER 13, 1938.

OPINION ON REHEARING FEBRUARY 13, 1940.

REHEARING DENIED JUNE 20, 1940.

James W. Taylor, John F. Droz, and W. G. Henke, for appellant.

Fred Everett, Attorney General, Jens Grothe, Assistant Attorney General, and Weston E. Jones, County Attorney, for appellee.

MILLER, J.—This cause has been submitted to us for reconsideration after the granting of a rehearing. For our former opinion, see State v. Graff, 282 N. W. 745. Such opinion is now withdrawn, and the following substituted in lieu thereof.

About 1 a. m. April 7, 1937, Helen Despard, in company with two other women and three men, namely, Marian Sullivan, Mildred Schuster, Ray Martin, Floyd Anderson and Fred Ford, was traveling in a Ford car, owned by Anderson, in a westerly direction on highway No. 18, toward Mason City. While so proceeding the car was stopped upon the highway within the corporate limits of Nora Springs, to permit Miss Despard to alight for the purpose of answering a call of nature. When she alighted, Ford and Martin also got out of the car. The car stopped on the north side of the pavement, and the three occupants that alighted from it did so on the north or right-hand side thereof. Miss Despard walked around to the rear of the car, as did Ford. Martin stood near the middle of the car. While the car was so parked, and while Miss Despard and Ford were at the rear of it, the defendant, driving alone, approached from the east at a speed of between 35 and 40 miles per hour, drove into the Anderson car, fatally injuring Miss Despard and seriously injuring Ford. On the following day, the county attorney filed an information, accusing defendant of the crime of manslaughter. The defendant entered a plea of not guilty. Trial was had to a jury, resulting in a verdict of guilty. Defendant was sentenced to the state penitentiary for an indeterminate term not exceeding 8 years. From such judgment he appeals.

I. At the close of the evidence, the defendant moved for a directed verdict. The motion was overruled. A motion for arrest of judgment, for a new trial, and exceptions to the instructions were filed and overruled. One of the principal contentions of appellant is that the evidence did not warrant submission of the cause to the jury, and does not sustain the verdict of guilty.

■■ At the time of this fatal injury, it was a dark night and had been raining. There was testimony that the visibility was poor, although it was not raining at the time and there was no fog. The evidence shows that the headlights and taillight on the Anderson car were all lighted. The car was on the right-hand side of the pavement. There was no other vehicle approaching from the opposite direction. There was a slight hill

or upgrade to the east for about 450 feet. The jury was warranted in finding that, from the brow of this hill or crest, the Anderson car could be seen by the defendant as he approached. It was parked within the corporate limits of Nora Springs, but toward the eastern edge thereof. In other words, the Anderson car and defendant's car were approaching the town and had just entered the corporate limits. There was no speed sign at the eastern corporate limit. There was a sign 510 feet west of the scene of the accident, which indicated a residence zone, and fixed the speed limit at 25 miles per hour. Accordingly, the only speed standard, which defendant was required to comply with at the time of the tragedy, was that fixed by section 5029 of the Code, 1935.

As heretofore stated, the speed of the defendant's car, as he approached the Anderson car, was estimated at between 35 and 40 miles an hour. Defendant's car came in a straight course, without slowing up, and struck the Anderson car in the back, pushing it forward. Miss Despard was apparently caught between the front bumper of defendant's car and the rear bumper of the Anderson car. Both of her legs were badly crushed below the knees, one of them was severed. Both of Ford's legs were also broken below the knees, but the flesh was not crushed. The Anderson car was driven forward some 6 or 8 feet and stopped near the right edge of the pavement, parallel to it. Defendant's car stopped on the pavement, with the right front wheel 1 or 2 feet from the north edge thereof, and the right real wheel on the shoulder within 2 feet of the edge of the pavement.

Counsel disagree in their interpretation of the evidence on the question how far Miss Despard had proceeded toward the south around the Anderson car. Appellant contends that she had proceeded to such a point that her body obscured the taillight, whereas the attorney general contends that the taillight was in plain view to the defendant as he approached. It was a question for the jury whether or not defendant could and should have seen the taillight on the Anderson car as he approached it. There was also evidence that defendant had

been drinking during the evening preceding the tragedy, but the evidence was not sufficient to justify the jury finding that defendant was intoxicated at the time of the collision.

In passing upon the contentions of counsel regarding the sufficiency of the evidence, we think that the situation may be clarified by first considering the theory upon which the court submitted the case to the jury.

The court defined the crime charged in the information by instruction No. 3, as follows:

"The crime charged against the defendant in this case is what is known in law as involuntary manslaughter, which is the unintentional killing of another by an unlawful act or acts, in such a manner as to show a wanton and reckless disregard and indifference for the safety of other persons who might be reasonably expected to be injured thereby."

In instructions Nos. 4 and 4½, the court advised the jury the speed standard fixed by section 5029 of the Code, including the requirement that the defendant be able to bring his car to a stop within the assured clear distance ahead, which was said to be "within the distance that discernible objects may be seen ahead of him." In instruction No. 5, the jury was advised as follows:

"In order to convict the defendant in this case, the burden is upon the State to prove beyond a reasonable doubt the following propositions, viz: 1. That the defendant in the operation of a motor vehicle, committed one or more of the unlawful acts defined in the instruction four above; 2. That the defendant committed one or more of said unlawful acts in such a manner as to show wanton and reckless disregard and indifference to the safety of others that might be reasonably expected to be injured thereby; 3. That the death of Helen Despard was the natural and proximate result thereof; 4. That the said crime was committed in Floyd County, Iowa, on or about the 7th day of April, 1937.

"If the state has so proved each and all of the above

propositions you should find the defendant guilty, but if the state has failed to so prove any one or all of said propositions you should acquit the defendant.''

The evidence regarding the use of intoxicating liquor by the defendant was commented upon by instruction No. 8, as follows:

''You are instructed that there is no evidence in this case that the defendant was operating his motor vehicle while in an intoxicated condition, at the time of the collision. The evidence which was admitted relating to the use of intoxicating liquors by the defendant, was admitted for the sole purpose and for the sole reason that the jury, in determining whether or not the defendant acted in a reckless disregard for the safety of others, may consider whether or not his mind was in any wise affected by intoxicants. If you find such use has been proved, you may consider it in that connection and for no other purpose.''

The attorney general contends that instructions Nos. 3 and 5 are more favorable to the defendant than the law requires, whereas the appellant contends that the evidence fails to sustain the burden cast upon the state by instruction No. 5. It is the contention of the attorney general that this court has overruled its former decisions regarding the definition of manslaughter in traffic cases, and that the state is no longer required to show wanton and reckless disregard and indifference to the safety of others. The state relies upon certain cases wherein we define manslaughter as the accidental killing of a human being while engaged in the doing of an unlawful act. The substance of its contention is that if the jury found that the defendant violated the law as defined in instruction No. 4 (the requirements of section 5029) and the death of Helen Despard was the proximate result thereof, her death resulted from the doing of an unlawful act, and the defendant was guilty of manslaughter. We find no merit in the contentions of the attorney general in this regard.

We have repeatedly held that, for one to be guilty of man-

slaughter because of the operation of a motor vehicle, the operation thereof must be such as to constitute wanton and reckless disregard and indifference to the safety of others. The contention now made by the attorney general is directly opposed to the express holding of this court in the case of State v. Clark, 196 Iowa 1134, 1139, 196 N. W. 82, 84, wherein we state:

"Instruction 10 is also subject to legal criticism; since under it, if the jury found that the defendant failed 'to have the motor vehicle under control, or failed to drive said vehicle in a careful and prudent manner, or failed to drive it at a rate of speed not endangering the life of other persons, or, in driving the said vehicle at an unlawful rate of speed, caused the injury to Edna Morgan which resulted in her death,' the jury could not do otherwise than convict. This instruction eliminates the gross negligence and reckless indifference to life which supplies the intent in criminal law in a case of this character."

The attorney general contends that the pronouncement of this court above-quoted was expressly overruled by the case of State v. Richardson, 216 Iowa 809, 249 N. W. 211. We have carefully read and considered the opinion in that case, and are convinced that it does not sustain the contentions of the attorney general. The point at issue there was whether the reckless disregard and indifference to the rights of others should be reckless indifference to the "lives" of others or merely reckless indifference to the "safety" of other persons. We held that the latter was sufficient. We point out at page 813 of 216 Iowa, 249 N. W. at page 213, that the court instructed the jury " ' that by the term "criminal negligence", as used in the instructions, was meant not merely such negligence as might be the foundation of a damage suit, but reckless and wanton, and of such a character as to show an utter disregard for the safety of others who might reasonably be expected to be injured thereby.' " While we state that the instruction in the main was favorable to the defendant, we also state at page 814 of 216 Iowa, 249 N. W. at page 213, "The jury was clearly told that to justify a conviction it was incumbent upon the state to prove

beyond a reasonable doubt that the defendant at the time was operating his automobile in a careless, heedless, and negligent manner in willful or wanton disregard of the safety of others.''

We are abidingly convinced that State v. Richardson, supra, does not overrule State v. Clark, supra. We adhere to the position there taken by us. Accordingly, we hold that the theory upon which the court submitted the case to the jury was the proper theory to be applied. This brings us to appellant's contention that the evidence was insufficient to sustain the burden cast upon the state by the court's instruction No. 5, and was, therefore, insufficient to sustain the verdict of guilty.

To determine this question, it seems advisable to briefly review our former decisions in cases involving convictions of manslaughter where the death resulted from a traffic injury. The cases are not as numerous as one might think. We have carefully examined all of the cases cited by counsel, and have made an independent research on the question. As a result thereof, the following decisions appear to warrant consideration.

In State v. Moore, 129 Iowa 514, 517, 106 N. W. 16, 17, the defendant was a professional horsebreaker, or trainer. A horse having escaped from his control in a public street of Muscatine, he procured another horse, which he mounted, and rode off in pursuit. The victim was considerably advanced in years and was on or near the sidewalk. As the chase approached, he went into the street and by flourishing his cane sought to stop the runaway horse. It swerved to one side and passed him by, but as deceased sought to return to the sidewalk, he was struck by the horse ridden by the defendant, knocked to the ground, receiving injuries from which he soon died. Defendant was indicted for murder, convicted of manslaughter, and appealed. The speed of defendant's horse violated a city ordinance. In holding that the evidence was sufficient to sustain the verdict, we state as follows:

''In the opinion of the trial court the evidence was insufficient to justify a finding that the act was done deliberately

or with malice aforethought, but instructed the jury that, if they found the killing was done with gross negligence and recklessness, the accused could be found guilty of manslaughter. This was clearly correct, unless we are to overturn all the precedents bearing upon the proposition.''

In State v. Biewen, 169 Iowa 256, 259, 151 N. W. 102, 104, a little girl 18 months old was struck and killed by a ''hit-and-run'' driver. The child's parents lived on a farm. Its mother had given it a cup of milk and left the child sitting in the farm lane drinking the milk. In returning from milking, the mother found the little girl was in the road with an automobile approaching. The child was struck and received injuries from which it died the following morning. The defendant was convicted of manslaughter and appealed. In affirming the conviction, we state as follows:

''The child was killed by an automobile being driven with an unobstructed view and as there was no obstacle to turning aside so as to avoid the collision, death might well have been found to have been in consequence of the recklessness of the driver. This was true whether the driver observed the child or not, for if he did not see he should have done so in the exercise of ordinary diligence. The slower he was moving in such a situation the greater must have been his carelessness. Counsel suggest that as the child was found west of the center of the road, the driver's attention may have been distracted by the dog on the east side and the child in following the dog may have run out in front of the car. A sufficient response to this is the mother's testimony that the child was in the road in plain view. Moreover, the driver must have been aware of striking the child, and moving on without stopping or tendering assistance was a circumstance indicative of guilt on his part. The evidence was such that the jury was warranted in finding that the child's death was due to the recklessness of the driver of the automobile and the only remaining issue was the identity of the driver.''

In State v. Salmer, 181 Iowa 280, 164 N. W. 620, defendant was indicted for manslaughter. The basis for the charge was that defendant operated his automobile in a grossly negligent and reckless manner and at an excessive rate of speed, that the automobile was driven at night, without lights, without warning, at between 20 and 30 miles an hour, while the defendant was in an intoxicated condition. In commenting upon the evidence we state, 181 Iowa at page 282, 164 N. W. at page 620:

"There was a sharp conflict in the evidence as to the speed at which the defendant was driving that night, and as to whether the lights were lighted. Under the evidence, it was an open question for the jury as to whether the defendant was under the influence of liquor immediately before and at the time of the accident, and a finding either way would have some support in the evidence. * * *

"There was no motion for a directed verdict; nor was the attention of the court challenged to the sufficiency of the evidence to justify a verdict, before the cause was submitted. It was suggested for the first time in the motion for a new trial. Since a new trial is to be granted on another ground, we express no opinion as to the sufficiency of the evidence."

The case was reversed because of misconduct on the part of the jury. By way of dicta, however, we make certain observations at 181 Iowa, page 283, 164 N. W. at page 621, which seem to accord with the theory of the court in the giving of instruction No. 8 herein. We there state:

"It is a matter of common knowledge that the conduct of men is greatly influenced by the condition they are in at the time they are called upon to act; that men under the influence of liquor do not possess the same cool judgment and discretion that men possess when not under its influence. When one is charged with careless, reckless conduct, or with conduct indifferent to the rights of others, a showing that he was intoxicated at the time is a very persuasive factor in leading the mind to the conclusion that the charge is well founded. Much,

of course, depends upon the stage at which the party has arrived at the time. Grossly intoxicated men have scarcely any judgment and discretion, and, as a rule, little regard for the rights of other people. The same evidence that would fail to convince the mind that a sober man, a man in his sober senses, did a specific act involving a reckless disregard of the rights of others, might readily be assumed to be true in the case of one who is grossly intoxicated, or operating under the influence of liquor. The condition of the defendant as to intoxication was a matter of great probative force upon the ultimate question to be solved by the jury.''

In State v. Clark, supra, the judgment was reversed for various reasons, among which was the error in giving instruction No. 10 hereinbefore quoted.

In State v. Tomlinson, 209 Iowa 555, 558, 228 N. W. 80, 81, the defendant was driving through the west edge of the town of Mediapolis at a time when it was dusk, almost dark. There were speed signs limiting the speed to 25 miles per hour. The evidence as to the speed of defendant's car varied from 20 to 50 miles an hour. The defendant testified that he did not know how fast he was driving, but he admitted seeing the speed sign. In sustaining the sufficiency of the evidence, we state as follows:

''We may point out at this time that the mere driving of the car by defendant at a rate of speed in violation of a city ordinance would not per se make the defendant guilty of manslaughter, even though the death of a person did result therefrom. State v. Clark, 196 Iowa 1134. But if the conduct of the defendant was utterly careless and abandoned, and in reckless disregard of the rights of other people or pedestrians upon the highway, then a conviction of manslaughter is sustainable. People v. Schwartz, 215 Mich. 197 (183 N. W. 723).

''The trial court was not in error in failing to direct a verdict at the close of all the testimony. A fact question was presented, and we are not inclined to disturb the verdict rendered by the triers of the fact.''

In State v. Long, 215 Iowa 494, 499, 245 N. W. 726, 728, the defendant undertook to pass a streetcar in the city of Des Moines, at a time when the car was stopped to permit passengers to alight therefrom. The victim of the tragedy stepped from the streetcar, was struck by the defendant's automobile and fatally injured. There was evidence that the defendant was driving at a speed of from 40 to 50 miles an hour, and that the impact hurled the victim's body approximately 110 feet beyond the front of the streetcar. In sustaining the sufficiency of the evidence, we state as follows:

"VII. Appellant contends that the court erred in failing to direct a verdict of not guilty at the close of all the testimony. The record presented essentially a fact case for the determination of the jury. The court could not hold that the appellant was not guilty under the record, as a matter of law. Clearly the state made a case for the jury and the court did not err in overruling the appellant's motion for a directed verdict."

Our latest pronouncement appears to be in the case of State v. Richardson, supra. In that case, the defendant was driving on a street in Ida Grove, about 4 p. m., approaching some children. There was a parking in the center of the street and some children were on the parking. The evidence showed that defendant operated a Model T Ford at a speed of 35 to 40 miles an hour, while in an intoxicated condition. In attempting to avoid one of the children, he drove onto the parking and struck the victim, fatally injuring him. The sufficiency of the evidence was not questioned on appeal. At the close of the opinion, however, we make an observation which might have been persuasive to the trial court herein, to wit [216 Iowa 809, 814, 249 N. W. 211, 213]:

"III. An instruction was requested by the defendant to the effect that intoxication alone of the defendant would not justify a conviction. The instruction might properly have been included in the charge. This subject is referred to in one of

the closing paragraphs of instruction 10 as a circumstance to be considered by the jury, with others, in determining the guilt or innocence of the defendant. That it was a circumstance having some weight with the jury in determining the guilt or innocence of the defendant may be conceded. It was a proper circumstance for consideration. An automobile is not inherently a dangerous instrumentality, but, when operated by an intoxicated driver, it becomes such.''

By virtue of the foregoing pronouncements, it is readily apparent that this court is committed to the following rule to be applied to manslaughter cases arising out of traffic injuries. If the evidence will warrant the jury finding that the defendant violated a speed limit fixed by statute or ordinance, and did so in such a manner as to show a wanton and reckless disregard and indifference for the safety of other persons who might reasonably be expected to be injured thereby, and as a result thereof, the victim was fatally injured, a verdict of manslaughter will be sustained.

▇ As heretofore pointed out, the only speed standard shown by the record to be applicable to the defendant herein, is that fixed by section 5029 of the Code, 1935. Defendant does not claim any diverting circumstance as an excuse for his not having seen the Anderson car. His only claim is that visibility was poor and Miss Despard may have been standing in such a manner as to conceal the taillight from defendant's view. Were this a civil action, under repeated pronouncements of this court, we would be forced to hold, as a matter of law, that, even with the taillight obscured or unlighted, in the absence of diverting circumstances, defendant violated the statute. Lukin v. Marvel, 219 Iowa 773, 777, 259 N. W. 782. Accordingly, in view of the fact that the jury was warranted in finding that the taillight was not obscured, the jury was clearly warranted in finding, under the record herein, that, at the time of Miss Despard's fatal injury, defendant was violating the speed standard fixed by statute. It is next necessary to determine whether or not such violation occurred in such a manner as to show a wanton

and reckless disregard and indifference for the safety of others who might reasonably be expected to be injured thereby.

In the case of State v. Biewen, supra, we held that, where a child was killed by an automobile driven with an unobstructed view, where there was no obstacle to turning aside to avoid the collision, death might well have been found to have been in consequence of the recklessness of the driver, whether the driver observed the child or not because, if he did not see it, he should have done so. That case goes a long way. The only additional factor there present was that the driver did not stop after he must have known that he hit someone. We are of the opinion that to reverse this case would require an overruling of that case. While the situation shown by the record is different, the factors here present seem to be, if anything, more impelling than those which prompted that decision.

In the Biewen case, the accident happened in broad daylight. Here it was upon a dark and rainy night. However, it was not raining and there was no fog. The record warrants a finding of sufficient visibility for an ample distance within which defendant should have discovered and avoided the Anderson car. The course in which the defendant's car was driven shows that he did not make any effort to avoid the car until he was almost upon it, if then. The injuries received by Miss Despard and Ford clearly demonstrate that the speed of the defendant's car was not slackened in any way prior to the impact. The jury was clearly warranted in determining that defendant did not see the Anderson car until it was too late to avoid the collision. He should have seen it.

In the Biewen case, the driver did not stop. In this case he did. A somewhat analogous circumstance, however, is here present. The defendant did not testify in his own behalf. While such failure to testify did not deprive the defendant of the presumption of innocence, the jury was entitled to consider it as an inference of guilt, and the county attorney was entitled to comment upon it. State v. Ferguson, 226 Iowa 361, 283 N. W. 917.

■ Another factor for the jury to consider herein was the conduct of the defendant after the tragedy. While standing near Miss Despard's body, he asked Martin if he had a gun. Martin answered in the negative and inquired why he wanted it, to which defendant replied, "I would like to finish everything right now."

■ In addition to the foregoing, there was evidence that would warrant the jury in finding that the defendant was under the influence of intoxicating liquor to some extent at the time of the fatal injury. Defendant requested an instruction that there was no evidence that defendant was operating his automobile while in an intoxicated condition. The requested instruction was given as the first sentence of instruction No. 8. In the balance of said instruction, the jury was advised that the use of intoxicating liquor by the defendant might be considered in determining whether or not he acted in a reckless disregard for the safety of others. This instruction would seem to be warranted by the language quoted from the case of State v. Salmer, supra. While the language of that opinion was dicta, in view of the fact that the cause was remanded for new trial, it was undoubtedly intended to be applied upon a retrial of the case. It was, therefore, well considered dicta. We think that the position there taken by us is sound and we adhere to it. The evidence warranted instruction No. 8 and this is a factor in determining whether defendant acted in a reckless disregard for the safety of others.

■ In commenting upon the evidence, we have referred only to the evidence which tends to support the jury's verdict. We have done so deliberately because we do not think the other evidence is material to the issue that confronts us. It is neither our duty nor privilege to determine the facts herein. We are limited to a consideration of what the jury was warranted in finding them to be. The jury has found the facts. In determining whether or not the court erred in overruling the motion for directed verdict at the close of the testimony and overruling that ground of the motion for new trial which challenged the sufficiency of the evidence to sustain the verdict, we necessarily

are limited to a fair consideration of the evidence which tends to sustain the verdict. If the jury was warranted in finding facts which sustain the necessary elements to warrant a conviction of manslaughter, then there is no error justifying a reversal on the grounds here considered.

Appellant contends that the foregoing evidence is insufficient to meet the requirements of our definition of recklessness as applied in civil cases under the "guest" statute, section 5026-b1 of the Code, 1935. Such cases are not applicable. In State v. Richardson, supra, we state, 216 Iowa at page 812, 249 N. W. at page 212, as follows:

"It is insisted by counsel for appellant that instruction 10 is inconsistent with the doctrine announced in Siesseger v. Puth, 213 Iowa 164, 239 N. W. 46. This case involved the interpretation of section 5026-b1 of the Code of 1927. This section relates entirely to civil actions brought to recover damages for injuries to automobile guests, and bears no relationship whatever to the statute involved in this case. The cases cited supra sufficiently make this clear."

The question herein is a close one. The court is not of one mind on the question, but a majority of the court, after a careful consideration of our former decisions and the evidence, as herein reviewed, is of the opinion that the court committed no error in overruling the motion for a directed verdict and the ground of the motion for new trial based on the alleged insufficiency of the evidence.

II. Appellant complains of the instructions on the ground that they did not sufficiently advise the jury that, if the proximate cause of the fatal injury was the negligence of Miss Despard, appellant was not guilty. Appellant recognizes that this court is committed to the proposition that contributory negligence of the victim is not a defense in a case of this kind. In State v. Thomlinson, 209 Iowa 555, 556, 228 N. W. 80, 81, we state:

"In this connection it may also be said that the question

of contributory negligence is never a defense or excuse for crime, nor can it in any degree serve to purge of its criminal character an act otherwise constituting a public offense. State v. Moore, 129 Iowa 514 [106 N. W. 16]."

But appellant insists that, irrespective of such rule, he was entitled to an instruction that, if the negligence of the victim was the proximate cause of the injury, he was not guilty.

A somewhat similar contention was made in the case of State v. Richardson, supra, and was answered by us at page 813 of 216 Iowa, 249 N. W. at page 213, as follows:

"The omission of any specific reference therein to the so-called theory of the defendant that the unfortunate death of the youth was due to unavoidable accident and not to criminal negligence is fully, in effect, covered by the instruction. The jury was clearly told that to justify a conviction it was incumbent upon the state to prove beyond a reasonable doubt that the defendant at the time was operating his automobile in a careless, heedless, and negligent manner in willful or wanton disregard of the safety of others."

Instruction No. 7 given by the court, states:

"You are instructed that the negligent or careless act of the deceased, if any, or of persons other than the defendant, if any, that might have contributed to the death of said deceased, will not relieve the defendant of criminal responsibility if the death of said deceased was naturally and proximately caused by the doing by the defendant of an unlawful act or acts as hereinbefore defined in such a manner as to show a wanton and reckless disregard and indifference to the safety of others who might be reasonably expected to be injured thereby."

This was sufficient to meet the objection of appellant. There was no error in this regard.

III. Complaint is also made of instruction No. 8, hereinbefore quoted, the complaint being that the instruction is in-

consistent, conflicting and contradictory. We do not think it is necessary to further discuss this instruction. It has been fully covered by what has been heretofore said. We find no merit in appellant's contention.

The record herein was carefully investigated by this court upon the original submission. It has been carefully re-examined upon re-submission. A majority of the court is of the opinion that appellant had a fair trial and that there is no error warranting a reversal. The judgment is affirmed.—Affirmed.

HAMILTON, C. J., and STIGER, SAGER, HALE, and OLIVER, JJ., concur.

MITCHELL and RICHARDS, JJ., dissent.

MITCHELL, J. (dissenting)—I find myself unable to agree with the majority and respectfully dissent.

The majority hold that the evidence warranted submission of the case to the jury, but confess it is a close question.

This tragedy occurred at 1 o'clock in the morning. It had been raining and all agree that visibility was poor. In the Anderson car were six people, three in the front seat and three in the rear. It was being driven in a westerly direction on federal highway No. 18, a paved road 18 feet wide. The occupants of this car had been drinking beer at a tavern. As they proceeded westerly Miss Despard asked the driver to stop as she desired to answer a call of nature. The driver did not stop, and she insisted that he stop. When the car reached a point east of Nora Springs, the car was stopped to the right of the center line of the pavement. There is some dispute as to where the right wheels of the car were, some witnesses place the wheels 2 inches off the pavement, others place them 5 inches on the pavement. All agree that the main part of the car was on the pavement. It was about 300 feet to the filling station, the first building with lights. The highway is on a constant decline from the brow of the hill to the filling station, a distance of 870 feet. That the elevation at a point about midway down the decline is 9 or 10 feet lower than at the brow of the hill. That the

brow of the hill is about at the same elevation as the street lights, and the lights would not therefore have helped one to see this parked car on the paved highway. Three of the occupants of the Anderson car got out, Martin stood near the front of the car on the shoulder, Ford near the rear, Miss Despard stood back of the car. There is a dispute as to her exact location, but she was on the pavement in the rear of the Anderson car. Whether she concealed the rear light is a question not definitely answered in the evidence. The front lights and the rear tail-light were burning.

The defendant drove a 1929 Model A Ford. He was coming from the east over the brow of the hill. The testimony is that he was driving at a rate of 35 miles an hour, but the physical facts show that he could not have been driving that fast, because he ran into the rear of the Anderson car which did not have its brakes on and only shoved the Anderson car ahead about 4 feet. Defendant was driving in a straight line.

The majority rightly state the law when they say, ''For one to be guilty of manslaughter because of the operation of a motor vehicle, the operation thereof must be such as to constitute wanton and reckless disregard and indifference to the safety of others.''

''Wanton and reckless disregard.'' Where in this record is there any such evidence?

It was a rainy night, the pavement was wet, the rear of the Anderson car was covered with dirt, even the taillight. The speed was 35 miles per hour, no weaving from side to side. In a straight line the defendant drove his car. Could he have possibly anticipated a car parked on the highway? And if he could no one will claim that he could have had any idea that a woman would be standing or squatting back of the car, in front of or near the taillight. The lower court submitted the case on the theory that the defendant had violated Code section 5029, ''the assured clear distance ahead statute.'' Maybe he was guilty of negligence, but that is not sufficient, he must have been reckless, and there must be evidence of that in order to submit the

case to the jury. If this was a civil action, commonly known as a guest case, would this court have said that it was a question for the jury upon this record, as to whether the driver was reckless or not? If they would, then I do not read correctly our guest cases. Siesseger v. Puth, 213 Iowa 164, 239 N. W. 46; Welch v. Minkel, 215 Iowa 848, 246 N. W. 775; Wion v. Hayes, 220 Iowa 156, 261 N. W. 531.

The Anderson car was not stopped on account of necessary repairs. It was an inexcusable stopping. Anderson had had opportunities and safe places to stop before, and he had safe places ahead of him.

The defendant violated no speed standard unless it be the assured clear distance ahead statute, and a violation of that statute has never been held by this court to constitute an unlawful act or reckless conduct and a reckless indifference to the safety of others.

Many cases are cited, I have read them all, and all of them are based on entirely different facts than the case at bar.

The majority say that a reversal of this case would overrule the case of State v. Biewen, 169 Iowa 256, 151 N. W. 102. Again I cannot agree. In the Biewen case it was daylight, the view was unobstructed for better than 300 feet. The defendant in that case did not claim he could not see the child. He drove over the child and never stopped. In the case at bar, it was a dark rainy night, with the back of the Anderson car splattered with mud. There was a woman behind that car, and she may have been in front of the taillight. Visibility was poor. It is hard for me to see how the Biewen case can be cited as authority for this case.

I come now to the question of intoxication. The record is not in dispute. There is some evidence the defendant had had intoxicating liquors, but no one says he was intoxicated. In fact the court instructed the jury "that there was no evidence in the case that the defendant was operating his motor vehicle while in an intoxicated condition." The court then told the jury that the evidence in regard to intoxicating liquors was ad-

mitted for the sole purpose of letting the jury determine "whether his mind was in any wise affected by intoxicants."

The evidence of witnesses was that they had smelled the breath of the defendant after the accident, and they recognized the odor of alcohol. Here we have a record where the court finds that the defendant was not intoxicated, and yet under this instruction the jury was permitted to speculate as to whether he had enough liquor to impair his judgment. With this I cannot agree. As I understand our cases the definition for intoxication is impairment of judgment, and since in this case there is no evidence of intoxication it necessarily follows that there is no evidence that his drinking impaired his judgment. I would reverse the case.

RICHARDS, J., joins in this dissent.