STATE OF IOWA, Appellee, v. CHARLES HANDY, Appellant.

No. 45855.

1038

MARCH 17, 1942.

W. B. Bedell, for appellant.

John M. Rankin, Attorney General, Jens Grothe, Assistant Attorney General, W. E. Hanson, County Attorney, and H. E. Narey, Special Assistant County Attorney, for appellee.

SAGER, J.—██ ██ On August 16, 1941, defendant was driving his car from Spencer to Spirit Lake, starting about 7:30 o'clock p. m. With him were three companions. At a place between Arnolds Park and Spirit Lake occurred the accident out of which this cause arises. Defendant's car was the last of a string estimated from three to five, all proceeding northward on highway No. 71, 100 feet apart, and at a speed of from 25 to 35 miles an hour. Immediately ahead of defendant was a car driven by one Stratman, who had as passengers three young ladies and a small boy. At this time a car driven by Packebush was approaching from the north at about 30 miles per hour. With him in the front seat was Mrs. Lamb; in the back seat were her husband and two children. There was no dispute that the night was dark, the pavement wet and slippery. No one denies that intermittently it was raining hard and driz-

zling. All cars were proceeding "dim." One witness, and she the only one who attempted to speak definitely on the subject, said at the time of the collision it was raining "pretty hard."

It is to be noted that all cars were proceeding in their proper lane. The accident occurred so suddenly that no witness was able to give any distinct account of just how it happened. Packebush testified:

"The road is straight. I saw 3 or 4 cars come toward me as we approached scene of the accident. There was a car to my left at the time of the collision. I was just about flush with it. About the time my lights were in the middle of the car I was meeting, a light flashed up in front of me in my lane. They were the lights of the Handy car. There was a crash and a collision which stopped the cars."

Mrs. Lamb was so badly injured that she died just a few moments after reaching the hospital at Spirit Lake. The defendant had a concussion of the brain, a fractured lower jaw, and several bruises of the head and body. One tooth was driven into the upper jawbone and two other teeth were broken. None of the occupants of the Stratman car saw the collision occur. One said, "we had a bump and I heard a crash."

Defendant's version of the affair is this:

"When I was about at the scene of the accident Harold Smoot [in the front seat with defendant] said, 'Watch out,' and I put on my brakes to slow down and I jerked my car to the left and I seen another car's headlights ahead of me and I tried to jerk it back. I never got back in time. When I first saw the car in front of me, it was about 15 or 20 feet away. It looked to me like the taillight was not lit, but like my lights were shining on red glass."

The other occupants of the car added little if anything to this statement. A motion to direct a verdict was made by defendant at the close of the State's testimony, and renewed at the close. Both motions were overruled, the trial court deeming State v. Graff, 228 Iowa 159, 290 N. W. 97, authority for submitting the case to the jury. Herein we think there was

error, the Graff case being in no way parallel or analogous to the one at bar.

██ Up to this point it must be apparent that no more than a negligence case has been presented. The State argues however that the testimony with reference to intoxicating liquor was sufficient to carry the case to the jury. Defendant's companions admit drinking, one of them to the point of intoxication. Defendant and all others who testified on the subject and were in a position to know testified that defendant did not drink. The court instructed that there was no evidence that the defendant was operating his car while in an intoxicated condition but added that evidence "relating to the use of intoxicating liquors by the defendant, was admitted for the sole purpose and for the sole reason that the jury, in determining whether or not the defendant acted in a reckless disregard for the safety of others, may consider whether or not his mind was in any wise affected by intoxicants."

The only evidence the State had with reference to the use of liquor by defendant was that of Lorena Ploss, who said she smelled liquor on his breath. The doctor and the dentist who worked on him for 40 minutes, beginning shortly after the accident, detected no signs or trace of liquor about him. We do not overlook the testimony of the witness Schwarzenbach. The State argues that he testified that he smelled liquor on defendant's breath, but his evidence in that regard is only this:

"The defendant was about 6 feet in front of his car. I was about 3 feet in front of him when I smelled whisky and saw someone throw a bottle. I do not know if the defendant saw the bottle thrown."

This completes the record except in minor details which do not alter the general picture. It is not sufficient to warrant a conviction and the trial court should have sustained defendant's motion to direct. Singularly, both sides cite these of our own authorities: State v. Moore, 129 Iowa 514, 106 N. W. 16; State v. Biewen, 169 Iowa 256, 151 N. W. 102; State v. Salmer, 181 Iowa 280, 164 N. W. 620; State v. Clark, 196 Iowa 1134, 196 N. W. 82; State v. Thomlinson, 209 Iowa 555, 228 N. W. 80; State v. Richardson, 216 Iowa 809, 249 N. W. 211; State v. Graff,

228 Iowa 159, 290 N. W. 97; State v. Jacobsmeier, 229 Iowa 878, 294 N. W. 920.

State v. Graff, supra, analyzes all the earlier cases, none of which supports a conviction on a record like that before us. State v. Jacobsmeier, supra, is not in point. Cases from other jurisdictions defining manslaughter are cited but it is unnecessary to discuss them. In no event do the facts before us measure up to these requirements of manslaughter as defined in the Graff case, 228 Iowa 159, 165, 290 N. W. 97, 100:

"We have repeatedly held that, for one to be guilty of manslaughter because of the operation of a motor vehicle, the operation thereof must be such as to constitute wanton and reckless disregard and indifference to the safety of others."

That the jury had distinct misgivings as to the justice of its decision may be inferred from this in its verdict: "We strongly recommend leniency."

Other assignments of error have been examined and found to require no consideration, in the light of the conclusion herein announced.

The cause is accordingly reversed and remanded with instructions to the trial court to dismiss the case.—Reversed and remanded with instructions.

All JUSTICES concur.