STATE of Iowa, Appellee,

v.

Ronald Dean BONER, Appellant.

No. 55152.

Supreme Court of Iowa.

Dec. 20, 1972.

Porter, Heithoff, Pratt & Reilly, Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., Raymond W. Sullins, Asst. Atty. Gen., and Lyle A. Rodenburg, County Atty., for appellee.

Heard before MOORE, C. J., and Le-GRAND, UHLENHOPP, HARRIS and McCORMICK, JJ.

LeGRAND, Justice.

This manslaughter case arising out of a fatal automobile accident in Council Bluffs is here for the second time. We previously reversed defendant's conviction because of error in admitting the results of a blood test administered contrary to the provisions of sections 321B.4 and 321B.5, The Code, 1966. See State v. Boner, 186 N.W.2d 161 (Iowa 1971). On retrial defendant was again convicted. He appeals from judgment which sentenced him to a term of not more than eight years in the Men's Reformatory and ordered him to pay a fine of $300 under the provisions of section 690.10, The Code, 1966. We affirm the trial court.

Defendant raises four issues in arguing for a reversal: (1) Error in the admission of *any* expert testimony on the question of intoxication; (2) error in permitting answers to hypothetical questions for which there was no proper foundation; (3) error in submitting the issue of wanton and reckless misconduct without evidentiary support in the record; and (4) error in permitting certain portions of defendant's testimony at his first trial to be read to the jury.

I. R. H. Bernstein, a professor of physiology and pharmacology at Creighton Medical School, was called as an expert witness to express his opinion that defendant was under the influence of an alcoholic beverage and to describe the effect of alcohol on human behavior. Defendant asserts such testimony is inadmissible in view of the 1969 amendment to section 321.281, The Code, which establishes an arbitrary blood alcohol content as presumptive evidence that a defendant was under the influence of an alcoholic beverage. Defendant insists the statute makes this the exclusive method of proving that fact. (See Chapter 205, Laws of the Sixty-third General Assembly, First Session, 1969.)

We do not agree. The amendment did not purport to preempt the field; it merely provided a convenient method of establishing defendant's condition. We discussed this amendment in State v. Hansen, Iowa, 203 N.W.2d 216, filed December 20, 1972, and there held the statute creates an inference of fact rather than a true presumption. We also held it was not—and could not constitutionally be—conclusive. Evidence may be introduced to rebut it, and there is nothing to suggest that otherwise competent evidence cannot similarly be used to fortify it.

Its true purpose is to permit a case to go to the jury on this issue upon nothing more than a showing of the required blood alcohol content. The State may

prove a stronger case by additional testimony.

Defendant cites Vore v. State, 158 Neb. 222, 63 N.W.2d 141 (1954) to support his argument here. That case was decided solely on the submission of issues for which there was no support in the record. To the extent that the language of the opinion conflicts with anything said here, we decline to follow it. Cf. State v. Protokowicz, 55 N.J.Super. 598, 151 A.2d 396, 399 (1959).

We find no merit in the argument that the statute establishes the exclusive and only method of proving the defendant's condition at the time in question.

II. However, even if Bernstein was properly allowed to express his opinion on the subject at hand, defendant argues the hypothetical question to which he gave answer was not supported by facts then in the record.

■ One of the accepted ways in which an expert may give his opinion is by response to a hypothetical question. Hedges v. Conder, 166 N.W.2d 844, 857 (Iowa 1969); Dougherty v. Boyken, 261 Iowa 602, 614, 155 N.W.2d 488, 495 (Iowa 1968); McCormick, Law of Evidence, page 29, section 14; 2 Jones on Evidence, page 781, section 415 (Fifth Ed. 1958); 31 Am.Jur.2d, Expert and Opinion Evidence, page 559, section 53. It is well established he may not be permitted to do so unless the facts then in the record or thereafter shown are such as will support the expression of such an opinion. Albrecht v. Rausch, 193 N.W.2d 492, 495 (Iowa 1972); Bernal v. Bernhardt, 180 N.W.2d 437, 439 (Iowa 1970); Hedges v. Conder, 166 N.W. 2d 844, 857 (Iowa 1969).

■ In the case before us Bernstein was asked to assume, among other facts, that defendant had drunk six 12-ounce cans of beer, having an alcoholic content of four percent, and one mixed drink of 86-proof bourbon and seven-up. Other facts includ-

ed in the hypothetical question are not challenged. Defendant says the record does not contain any facts showing the alcoholic content of the beer or of the whiskey.

The objection was good when made, and the court provisionally allowed the answer upon the State's promise to connect it up. Thereafter there was evidence that the bourbon defendant drank was 86.6 proof and the beer in 12-ounce cans was "regular beer which you normally buy at a store or tavern" in Iowa.

This was clearly sufficient as to the alcoholic content of the bourbon and the size of the cans of beer. The only questionable item was the alcoholic content of the beer. No witness testified directly on this matter. We discount the statement of one witness who said he didn't know if it was three percent, four percent, or what it was.

However, direct testimony is not always required if the fact to be assumed is fairly inferable from the circumstances proved. 31 Am.Jur.2d, Expert and Opinion Evidence, page 562, section 56; McCormick, Law of Evidence, page 31, section 14. See also 1 Jones on Evidence, page 29, section 2:1 (Sixth Ed., 1972); 29 Am.Jur.2d, Evidence, page 53, section 14.

We believe evidence that the beer was in 12-ounce cans and was the regular beer sold at Iowa stores and taverns was sufficient to establish for purposes of the hypothetical question its alcoholic content. Under such circumstances it was permissible to take judicial notice of the fact that by law (sections 124.2(10) and 124.31, The Code, 1966) beer sold in this state has an alcoholic content of four percent by weight.

We find no reversible error in permitting the witness to answer the hypothetical question.

III. Defendant next urges that mere violations of the rules of the road, without more, cannot support a charge of manslaughter. He says the State proved only

negligence on his part, which under our cases is insufficient to sustain his conviction. State v. Kellison, 233 Iowa 1274, 1276, 11 N.W.2d 371, 372 (1943) ; State v. Graff, 228 Iowa 159, 164–166, 290 N.W. 97, 100 (1940).

■ Defendant entirely disregards the evidence of wanton and reckless conduct which accompanied his negligent driving. The jury was properly instructed on this element. One instruction informed the jury there could be no conviction unless defendant had acted in such a way as to indicate "either a wilful, wanton or reckless disregard for the safety of other persons or property." In another instruction the jury was told the evidence must show defendant to have been guilty of "unintentionally killing another by an unlawful act or acts in such a manner as to show a wanton, reckless and utter disregard and indifference for the safety of the other." We have held the question of intoxication may be considered as bearing upon the wilful and wanton misconduct of defendant in violating an ordinary law of the road. State v. Davis, 196 N.W.2d 885, 891 (Iowa 1972) ; State v. Wallin, 195 N.W.2d 95, 98, 99 (Iowa 1972) ; State v. Graff, 228 Iowa 159, 174, 290 N.W. 97, 103–104 (1940).

■ Under the record before us evidence that defendant was under the influence of an alcoholic beverage warranted the necessary finding of "wilful, wanton or reckless" conduct. Although the question arises differently than in defendant's first appeal, what we said there (186 N.W.2d at page 166) also supports this conclusion. This issue was correctly submitted to the jury.

IV. This leaves for discussion only one remaining assignment of error: Was the trial court correct in permitting portions of defendant's testimony at the first trial to be read to the jury at his second trial?

■ The general rule is that one who testifies voluntarily cannot prevent that testimony from being used against him at a subsequent trial by asserting his right against self-incrimination. Once waived, such right cannot later be re-invoked. However, defendant argues this case is controlled by Harrison v. United States, 392 U.S. 219, at page 222, 88 S.Ct. 2008, at page 2010, 20 L.Ed.2d 1047, at page 1051 (1968), where the court held that a defendant whose evidence at the first trial had been "impelled" by the wrongful introduction of an illegally obtained confession could enjoin the use of his previous testimony at his second trial. The rationale is that such testimony is not a voluntary waiver of defendant's constitutional privilege.

The court said, " * * * [T]he same principle that prohibits the use of [the illegally obtained] confessions * * * also prohibits the use of any testimony impelled thereby—the fruit of the poisonous tree, to invoke a timeworn metaphor."

That case further held the government has the burden of showing the testimony at the first trial was not the result of the illegally obtained evidence before it may be used upon re-trial. In other words, would a defendant have testified if the illegally obtained evidence had not first been used against him ?

At defendant's first trial blood test results were admitted to show defendant was under the influence of an alcoholic beverage. Defendant thereafter took the stand to testify in his own behalf. On appeal we held the admission of the blood test evidence was error, and we reversed.

On retrial the State read to the jury portions of defendant's first-trial testimony. Defendant now argues this was error. He relies on Harrison v. United States, supra, and says he would not have testified at his first trial except for the wrongful introduction of the blood test evidence.

Defendant raised this issue prior to his second trial by filing a motion to suppress his first-trial evidence. The motion was overruled after a hearing out of the pres-

ence of the jury. At that hearing, in answer to a question as to why he had testified at his first trial, defendant answered as follows: "My lawyer told me it would be best and then I thought that since he already had all those doctors come in and take my blood test I would be all right I guess. I really didn't have no other choice I don't think."

Defendant also answered on cross-examination that he understood his right not to testify and that he testified voluntarily, knowing his constitutional rights.

■ As pointed out in the Harrison case, the reasons which prompt a defendant to testify are not always clear cut or easily definable. Ordinarily defendant's explanation as to why he testified at his first trial would pose a difficult problem and would perhaps compel an application of the rule announced in the Harrison case. However, a careful review of this record discloses a reason of overriding importance which would have compelled defendant to take the stand in any event.

It is simply this: Defendant insists he was not the driver of the death car. Both at his first trial and at his second, defendant placed George Moreland behind the wheel when the accident occurred. There was no other evidence to establish this defense.

We need not be so naive as to accept defendant's claim he testified only because the blood test results were improperly admitted when in fact it appears beyond doubt he did so in order to put his non-driving defense before the jury. No other explanation is credible.

We do not believe the Harrison case is authority for excluding the testimony under such circumstances. Cf. Kauffman v. Secretary of the Air Force, 135 U.S.App. D.C. 1, 415 F.2d 991, 999 (1969).

V. Finding no reversible error in any of the issues raised, we affirm the trial court.

Affirmed.