The State v. Hardie.

## The State v. Hardie.

1. **Criminal Law:** use of deadly weapon: manslaughter. If one use a dangerous and deadly weapon in a careless and reckless manner, whereby another person is killed, the party so using the dangerous weapon is guilty of manslaughter, even though no harm is in fact intended.

2. ————: ————: degree of care. The degree of care required of one handling a dangerous and deadly weapon is not the highest degree of care and prudence, but only such care as a reasonably prudent man would exercise under like circumstances.

*Appeal from Des Moines District Court.*

Thursday, March 21.

The defendant was indicted for murder in the second degree. He was convicted of the crime of manslaughter, and sentenced to the penitentiary for one year. The facts of the case appear in the opinion.

*J. & S. K. Tracy* and *C. B. Harrington*, for appellant.

*J. F. McJunkin*, Attorney General, for the State.

Rothrock, Ch. J.—I. It appears from the evidence that the defendant was a boarder in the family of one Gantz, who is his brother-in-law. On the day of the homicide defendant was engaged in varnishing furniture. Mrs. Sutfen, a neighbor, called at the house, and after some friendly conversation she went into the kitchen. When she came back defendant picked up a tack hammer and struck on the door. She said, "My God, I thought it was a revolver." A short time afterwards she went into the yard to get a kitten. [De]fendant said he would frighten her with the revolver as she came in. He took a revolver from a stand drawer and went out of the room, and was in the kitchen when the revolver was discharged. He immediately came in and said to Mrs. Gantz, his sister, "My God, Hannah, come and see what I have done." His sister went out and found Mrs. Sutfen lying on the sidewalk

at the side of the house, with a gunshot wound in the head, and in a dying condition. A physician was immediately called and made an examination of the deceased, took the revolver from the defendant, and informed him that nothing could be done for the deceased, whereupon the defendant became violent, said the shot was accidental, and exclaimed several times that he would kill himself. It became necessary to secure him, which was done by tying him with ropes.

The revolver had been in the house for about five years. It was found by Gantz in the road. There was one load in it when found. Some six months after it was found Gantz tried to shoot the load from it and it would not go off. He tried to punch the load out, but could not move it. He then laid it away, thinking it was harmless. The defendant was about the house and knew the condition of the revolver. Upon one occasion Gantz said he would try to kill a cat with the revolver. Defendant being present said he would not be afraid to allow it to be snapped at him all day. The revolver remained in the same condition that it was when found, no other load having been put into it, and it was considered by the family as well as defendant as entirely harmless.

The foregoing is the substance of all the evidence.

The State did not claim that the defendant was guilty of murder, but that he was guilty of manslaughter because of criminal carelessness. The defendant insisted that there was no such carelessness as to render the act criminal, and that it was homicide by misadventure, and therefore excusable.

The court instructed the jury as follows: "5. And on the charge of manslaughter, I instruct you that if the defendant used a dangerous and deadly weapon, in a careless and reckless manner, by reason of which instru-ment so used he killed the deceased, then he is guilty of manslaughter, although no harm was in fact in-tended."

1. CRIMINAL law: use of deadly weapon: man-slaughter.

Other instructions of like import were given, and the question of criminal carelessness was submitted to the jury, as follows: "8th. And in this case I submit to you to find the facts of recklessness and carelessness

2. ——: ——: degree of care.

under the evidence, and if you find that the death of the party was occasioned through recklessness and carelessness of the defendant then you should convict him, and if not you should acquit. And by this I do not mean that defendant is to be held to the highest degree of care and prudence in handling a dangerous and deadly weapon, but only such care as a reasonably prudent man should and ought to use under like circumstances, and if he did not use such care he should be convicted, otherwise he should be acquitted."

There can be no doubt that the instructions given by the court embody the correct rule as to criminal carelessness in the use of a deadly weapon. Counsel for defendant insist that the instructions of the court do not go far enough, and upon the trial asked that the court give to the jury the following instruction:

"3. Although the deceased came to her death from the discharge of a pistol in the hands of the defendant, yet if the defendant had good reason to believe, and did believe, that the pistol which caused her death was not in any manner dangerous, but was entirely harmless, and if he did nothing more than a man of ordinary prudence and caution might have done under like circumstances, then the jury should find him not criminally liable and should acquit."

This instruction and others of like import were refused by the court, and we think the ruling was correct. That the revolver was in fact a deadly weapon is conclusively shown by the terrible tragedy consequent upon defendant's act in firing it off. If it had been in fact unloaded no homicide would have resulted, but the defendant would have been justly censurable for a most reckless and imprudent act in frightening a woman by pretending that it was loaded, and that he was about to discharge it at her. No jury would be warranted in finding that men of ordinary prudence so conduct themselves. On the contrary, such conduct is grossly reckless and reprehensible, and without palliation or excuse. Human life is not to be sported with by the use of firearms, even though the person using them may have good reason to believe that the weapon used is not loaded, or that being loaded it will do

no injury. When persons engage in such reckless sport they should be held liable for the consequences of their acts.

II.   It is argued that the evidence does not show the defendant guilty of criminal carelessness, because it does not appear that the defendant pointed the pistol at the deceased, or how it happened to be discharged. The fact that defendant took the weapon from the drawer with the avowed purpose of frightening the deceased, and while in his hands it was discharged with fatal effect, together with his admission that he did the act, fully warranted the jury in finding that he purposely pointed the pistol and discharged it at the deceased.

AFFIRMED.