STATE of Iowa, Appellee,

v.

David Leid KERNES, Appellant.

No. 59584.

Supreme Court of Iowa.

Feb. 22, 1978.

Clark L. Holmes, of Holmes, Ralph & Kutmus, Des Moines, for appellant.

Richard Turner, Atty. Gen., Dan Johnston, County Atty., Des Moines, and Richard G. Blane II, Asst. County Atty., for appellee.

Considered by MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

The fighting issue in this appeal is the appropriate standard of conduct to be included in a jury instruction in an involuntary manslaughter case arising out of a shooting incident.

July 7, 1975, defendant and some friends and acquaintances participated in a movable drinking bout. It terminated that night

in a friend's house where defendant and Joe Ramirez engaged in friendly "slap fighting."

Defendant picked up a .410 shotgun he knew was loaded and pointed it at the unarmed Ramirez. He said, "Mother Fucker, this makes me the man." Two others present warned him the gun was loaded. The gun discharged, fatally wounding Ramirez.

The police were called by defendant, who remained on the scene. There was strong evidence defendant was drunk and the shooting was not intentional. There was additional evidence defendant had a cast on one arm and the shotgun may have had a mechanical defect.

Defendant was charged with manslaughter. He was convicted upon trial and sentenced to the Men's Reformatory at Anamosa for a period not to exceed eight years. Defendant appeals and we reverse and remand.

The sole issue presented for review is whether trial court erred in its jury instruction regarding the standard of conduct element of the crime of involuntary manslaughter.

I. Trial court's jury instruction seven was submitted in the following form:

"Before the defendant can be found guilty of the crime of Manslaughter, the State must prove each of the following propositions:

"1. That on or about July 8, 1975, in Polk County, Iowa, the defendant did shoot Joseph Rameriz [sic].

"2. That Joseph Rameriz died as a result of such shooting.

"3. That the defendant handled the gun in such a careless and reckless manner and while so doing did unlawfully, carelessly and recklessly shoot Joseph Rameriz, thereby causing the death of Joseph Rameriz.

"Manslaughter is the unlawful killing of one human being by another without deliberation, premeditation or malice, as where one engaged in an unlawful act not amounting to a felony, unintentional-

ly kills another or, if one recklessly and heedlessly fires a gun and thereby kills another, he will not be excused, but his offense will be manslaughter, though the weapon was pointed in the direction of the deceased by accident with no design to wound or kill.

"The defendant in handling a deadly and dangerous weapon was bound to exercise such care as an ordinarily careful and prudent man would exercise under the circumstances, and if he failed to do so he would be negligent. He was not required to exercise the highest degree of care, but only such care as a reasonably prudent man should and ought to use under like circumstances. If he did so, then the killing of the deceased would be excusable and he should be acquitted; but if you find from the evidence beyond a reasonable doubt that he failed to exercise such degree of care and he was guilty of negligently and recklessly using such weapon whereby the deceased was shot and killed, such killing would be manslaughter.

"If you find from the evidence beyond a reasonable doubt that at the time and place alleged in the Information the defendant was aiming at or shooting at the ceiling and that in so doing he was he was [sic] using a deadly and dangerous weapon recklessly, carelessly and negligently, or so find that in aiming at or shooting at the ceiling, if he was, defendant was shooting so close to Joseph Rameriz as that his act in so doing was a negligent, careless and reckless use of a deadly weapon and that by reason of such reckless and negligent use of such weapon Joseph Rameriz was shot and killed, such killing would be manslaughter.

"Unless you find from the evidence beyond a reasonable doubt that defendant's use of said gun at the time of the shooting was negligent and reckless, you should acquit him.

"Negligence is the lack of such care as an ordinarily careful man would exercise under like circumstances. It is a relative term, and whether or not an act is negligent depends upon all the circumstances

and conditions attending the act. In determining whether or not the defendant was negligent in his use of the gun in question you should consider all the facts and circumstances surrounding him at the time: where he aimed or pointed the gun, and how close to the deceased the same was pointed; his skill or lack of skill with firearms, the character of the gun in question as known to him, and the familiarity of defendant with the gun or his lack of it; his condition as to intoxication or otherwise; and any and all other facts and circumstances in evidence that may aid you in determining the question, bearing in mind that he was bound to exercise such degree of care as an ordinarily careful and prudent man would exercise in like circumstances and no more.

"If the State has proved each of the above three (3) propositions as explained then you would be warranted in finding the defendant guilty of the crime of manslaughter; otherwise not."

Defendant timely objected the instruction confused the words "recklessly," "heedlessly" and "negligently," that they were not all defined in the instruction, and in any event a manslaughter conviction could not stand on negligence because the standard of conduct for conviction, would be recklessness.

Trial court overruled the objection, observing the instruction was patterned after a manslaughter instruction approved by this court in *State v. Warner,* 157 Iowa 111, 119–121, 137 N.W. 466, 469–470 (1912), and when "someone is using a dangerous instrumentality * * * the standard of care required is ordinary negligence and not recklessness."

On appeal, the State argues negligence is the applicable standard of conduct, use of the word reckless in the instruction, if error, was error against the State, and defining recklessness would have further prejudiced the prosecution.

II. Trial court was right in stating its instruction followed an instruction approved in *State v. Warner,* supra. However, we now would not select *Warner* as a

stellar source of expositive law in the field of involuntary manslaughter. Legal senses fine-tuned to the distinction between negligence and recklessness in other areas of the law, including motor vehicle statutes and decisions, are offended by indiscriminate blurring of the words "negligence," "careless," "reckless" and "heedless."

However, in the incongruous coupling of these words, *Warner* followed a line of manslaughter-by-gunfire cases stretching back to at least *State v. Vance,* 17 Iowa 138, 146–147 (1864) ("If one fires a gun recklessly or heedlessly * * * gross carelessness, even in the performance of what is lawful * * * negligent omission of a legal duty"); see *State v. Hardie,* 47 Iowa 647, 648 (1878) ("careless and reckless"). Nor did *Warner* mark the end of such anomalous language. See *State v. Burris,* 198 Iowa 1156, 1159, 198 N.W. 82, 84 (1924) ("negligently and recklessly"); *State v. Towne,* 180 Iowa 339, 346, 160 N.W. 10, 12–13 (1916) ("negligence or carelessness"). The problem is exacerbated by statutes of relatively recent origin. See, for example, § 328.41, The Code, which makes it a misdemeanor for a pilot to operate an aircraft in a "careless or reckless manner so as to endanger the life or property of another." See also the comparable federal statute, 49 U.S.C. § 1471(a); *United States v. Newman,* 331 F.Supp. 1240, 1241 (D.Haw.1971) n. 1. Such imprecision resulted in *State v. Bahl,* 242 N.W.2d 298, 301–302 (Iowa 1976), from which it may be deducted that "careless," as employed in § 328.41, does not mean "negligent." Compare *State v. Hayes,* 244 Minn. 296, 299, 70 N.W.2d 110, 113 (1955) ("at common law the terms 'carelessness' and 'ordinary negligence' were treated as synonymous").

A cursory examination of the decisions capsulated in 6 Words and Phrases, "Careless" through "Carelessness or Negligence," pp. 253–260 (1966), and 19 Words and Phrases, "Heedless" through "Heedlessness or Reckless Disregard of Others' Rights," pp. 346–353 (1970), reinforces a conclusion these words employed to characterize criminal conduct may have various meanings de-

pending on the context in which used, and they frequently take on a coloration from associated words. The cited cases dramatically support Mr. Justice Holmes' observation that:

> "A word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used."

—*Towne v. Eisner,* 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372, 376 (1918) On the other hand, due process may require resort to adjudicated cases to determine the meaning of words characterizing criminal conduct. See *State v. Williams,* 238 N.W.2d 302, 307 (Iowa 1976). Our opinions, therefore, should require as much uniformity and precision as possible.

A careful examination of the instruction *sub judice* might lead a lawyer to conjecture these various words (careless, heedless, reckless) were equated with negligence, and the standard of culpable conduct imposed was negligence in handling the gun. Four times in this instruction the court articulated the reasonably prudent person test. However, only negligence was defined. We cannot find as a matter of law a jury of lay persons would construe "heedless" and "careless" as imposing a higher standard of conduct than negligence as defined by the court. It is by no means certain the error, if any, was prejudicial only to the State. We hold the instruction, although following prior case law, was sufficiently confusing and inconsistent to require reversal.

It may well be there would be no real distinction between a care standard requiring recklessness to be proved in all involuntary manslaughter prosecutions, and a separate conduct standard requiring only negligence if a deadly weapon or dangerous instrumentality is involved, on the theory negligent handling of such a device would constitute recklessness in any event. It is plain that culpability of a person's unintentional death-causing conduct must still be weighed in light of all surrounding facts and circumstances, the activity he or she engaged in at the relevant time, and the inherent risk to others of the activity or instrumentalities involved.

However, this reasoning does not resolve the inherent problems created by an instruction which, superficially at least, applies conduct standards of "negligence," "recklessness," "carelessness" and "heedlessness," singly and in random combination.

Nor is there any apparent justification for commingling those words in a case of involuntary manslaughter by shooting, and carefully defining and drawing the distinction between recklessness and negligence in cases of involuntary manslaughter by motor vehicle. See *State v. Boner,* 186 N.W.2d 161, 166 (Iowa 1971), appeal after remand, 203 N.W.2d 198, 201 (Iowa 1972); *State v. Wallin,* 195 N.W.2d 95, 99 (Iowa 1972); I.S.B.A. Uniform Jury Instructions (Criminal) 513.33, 513.35, and 513.36.

In absence of a controlling statute, we are persuaded there should be but one standard of conduct applicable in these involuntary manslaughter cases. Culpable conduct should require proof of recklessness, that is, conduct evidencing either a willful or wanton disregard for the safety of others. See *State v. Townsend,* 238 N.W.2d 351, 356 (Iowa 1976); *State v. McLaughlin,* 250 Iowa 435, 439–441, 94 N.W.2d 303, 305–306 (1959); § 321.277, The Code, 1977, amended, 66 G.A., ch. 1245, ch. 4, § 282; cf. Supp., The Code, 1977, Criminal Law and Criminal Procedure, (Iowa Criminal Code) § 702.16 (defining "reckless"); § 707.5(2) (defining involuntary manslaughter " * * * the commission of an act in a manner likely to cause death or serious injury"); § 712.5 (reckless use of fire or explosives). Ordinarily, such conduct should be conscious and intentional, creating an unreasonable risk of harm to others, where such risk is or should be known to defendants. See *State v. Stewart,* 223 N.W.2d 250, 252 (Iowa 1974), cert. den., 423 U.S. 902, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975); *State v. Baker,* 203 N.W.2d 795, 796 (Iowa 1973).

As in vehicular homicide cases, a person who causes the death of another by attempting to handle a deadly weapon while intoxicated is surely so reckless as to be guilty of homicide. See *State v. Stewart,* supra, 223 N.W.2d at 252; *State v. Davis,* 196 N.W.2d 885, 890 (Iowa 1972). Although we sometimes have expressed the rationale that an automobile in the hands of an intoxicated person may become a dangerous instrumentality, *Davis,* supra, and citations, a more consistent analysis is expressed by J. Hall, Negligent Behavior Should Be Excluded from Penal Liability, 63 Col.L.Rev. 632, 634 (1963):

> "It should from the outset be borne in mind that negligent behavior implies inadvertence and must therefore be sharply distinguished from voluntary harm-doing, *i. e.,* from conduct that includes at least an awareness of possible harm. If, for example, one who is about to drive an automobile knows that he is ill or very tired or if he drinks alcoholic beverage knowing this will incapacitate him, subsequent damage may justifiably be attributed to the immediately prior conduct. Taking all the directly relevant facts into account, it is tenable, though far from self-evident, to hold that he was reckless, not merely negligent."

The sweep of history has been away from positing manslaughter on mere negligence. *Id.,* at 635; Note, Iowa Criminal Law—A Need for Reform, 51 Iowa L.Rev. 883, 894–895 (1966). The general rule requires more than civil negligence to impose criminal liability for homicide. 40 Am.Jur.2d, Homicide, § 92, pp. 387–388 (1968); 40 C.J.S., Homicide § 62, pp. 924–929 (1944); see *State v. Handy,* 231 Iowa 1037, 1041, 2 N.W.2d 763, 764 (1942); *State v. Richardson,* 216 Iowa 809, 811, 249 N.W. 211, 212 (1933).

■ In manslaughter cases involving automobiles, we have consistently permitted evidence of drinking or intoxication to be considered even though the charge is grounded on recklessness. *Davis,* supra, 196 N.W.2d at 891 ("the jury * * * could still take his drinking into consideration under the charge of recklessness");

*State v. Graff,* 228 Iowa 159, 174, 290 N.W. 97, 103–104 (1940) ("the use of intoxicating liquor by the defendant * * * is a factor in determining whether defendant acted in a reckless disregard for the safety of others"); *State v. Salmer,* 181 Iowa 280, 283, 164 N.W. 620, 621 (1917) ("When one is charged with * * * reckless conduct, or with conduct indifferent to the rights of others, a showing that he was intoxicated at the time is a very persuasive factor in leading the mind to the conclusion that the charge is well-founded."). It follows in an involuntary manslaughter-by-gunfire case, the jury may be instructed defendant's drinking or intoxication may be considered in determining whether defendant acted recklessly.

In a case like the one before us, an additional appropriately-worded instruction founded on *State v. Hardie,* supra, 47 Iowa at 649–650, would permit the jury to consider the specific conduct there proscribed as bearing on the issue of a defendant's recklessness. Under circumstances similar to those before us, the *Hardie* court said:

> "Human life is not to be sported with by the use of firearms, even though the person using them may have good reason to believe that the weapon used is not loaded, or that being loaded it will do no injury. When persons engage in such reckless sport they should be held liable for the consequences of their acts."

Cf. Supp. to Code, 1977, Criminal Law and Criminal Procedure, § 708.1 (assault committed by pointing any firearm toward another, except in special enumerated situations).

We hold this case must be reversed and remanded for retrial in conformance with this opinion. Prior decisions of this court, insofar as inconsistent herewith, are overruled. Our citations to the Iowa Criminal Code are for reference only and should not be interpreted to mean the law of that Code is applicable to this incident, which occurred before its effective date. See 66 G.A., ch. 1245, § 528 (1976).

REVERSED AND REMANDED.