**IN THE COURT OF APPEALS OF IOWA**

No. 14-1202
Filed August 19, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CORNELL MILLER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Mary E. Howes,

Judge.


        Cornell Miller appeals his conviction for involuntary manslaughter.

**REVERSED AND REMANDED.**


        Mark C. Smith, State Appellate Defender, and Theresa R. Wilson,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Kevin Cmelik and Jean C. Pettinger,

Assistant Attorneys General, Michael J. Walton, County Attorney, and Amy

DeVine, Assistant County Attorney, for appellee.


        Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**MCDONALD, J.**

Cornell Miller was convicted of delivery of a controlled substance as a habitual offender, in violation of Iowa Code sections 124.401(1)(c) and 902.8 (2013), and involuntary manslaughter as a habitual offender, in violation of Iowa Code sections 707.5(1) and 902.8. On appeal, Miller challenges only his manslaughter conviction, claiming there is insufficient evidence to support the conviction. Miller also challenges the district court's refusal to give his requested jury instruction on causation.

I.

On September 11, 2013, Miller sold three doses of heroin to Trisha Delong and Dan Hansen. Delong and Hansen were in a romantic relationship and cohabited. According to Delong, she and Hansen went to Miller's residence to purchase the heroin, and they returned to their residence to consume the heroin. They combined the three doses of heroin into two doses and consumed them intravenously. Delong admitted she injected the heroin into Hansen's arm. After ingesting the heroin, Hansen and Delong both passed out. When Delong awoke, she noticed Hansen was still passed out. She tried to wake him, but he was non-responsive. She contacted 911 emergency services. Paramedics responded to the home and transported Hansen to the hospital, where he was pronounced dead.

Dr. Dennis Firchau conducted the autopsy. The autopsy revealed Hansen was in extremely poor health, suffering from several medical conditions, including obesity, the narrowing of his coronary arteries, an enlarged heart due to

hypertension, a congenital abnormality of his heart valve, and a malignant tumor on his kidney. Toxicology results showed Hansen had blood ethanol level of .043. The results also showed metabolites of heroin in Hansen's system. Dr. Firchau testified he would have opined Hansen's cause of death was heart disease if there had been no heroin present in Hansen's system. Ultimately, Dr. Firchau opined Hansen died from combined alcohol and heroin intoxication. Dr. Firchau explained Hansen's alcohol intoxication alone "most likely" would not have caused his death. He was never asked during trial whether Hansen would have died from heroin overdose in the absence of alcohol.

During the course of the investigation into Hansen's death, Delong identified Miller as the person from whom she and Hansen had purchased the heroin that night. The police executed a search warrant on Miller's residence and discovered items consistent with narcotics distribution. Miller was arrested and charged with involuntary manslaughter and delivery of a controlled substance.

At trial, Miller argued that Delong's injection of heroin into Hansen's arm was an intervening and superseding cause of Hansen's death, and Miller requested an instruction on the same. The district court declined to give the requested instruction. Miller's counsel then requested that if his intervening-cause instruction was not given, then no additional instruction on causation be given. The district court granted Miller's request and did not give any instruction defining causation. The jury found Miller guilty as charged. At sentencing, Miller stipulated to the habitual offender sentencing enhancement. The district court

sentenced Miller to serve an indeterminate term of incarceration not to exceed fifteen years. This appeal followed.

II.

Miller first contends there was insufficient evidence to prove he acted recklessly. "[W]e review challenges to the sufficiency of the evidence for correction of errors at law." *State v. Edouard*, 854 N.W.2d 421, 431 (Iowa 2014). "In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (internal quotation marks and citation omitted). We will uphold a verdict if it is supported by substantial evidence. *See id.* "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.* But "[e]vidence that raises only 'suspicion, speculation, or conjecture' is not substantial evidence." *State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997). "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence and credit other evidence." *Sanford*, 814 N.W.2d at 615 (internal quotation marks and citation omitted).

We begin our discussion with the relevant statute and cases interpreting the same. Iowa Code section 707.5 provides that felonious involuntary manslaughter, as charged here, occurs "when the person unintentionally causes the death of another person by the commission of a public offense other than a

forcible felony or escape." Iowa Code § 707.5(1)(a). On its face, the statute appears to impose strict liability for the death of another caused by the commission of a public offense other than forcible felony or escape. In *State v. Conner*, 292 N.W.2d 682, 686 (Iowa 1980), however, the court held the legislature "intended to preserve the common law requirement of recklessness in its provisions for involuntary manslaughter." Since *Conner*, our courts have continued to hold that recklessness "is an additional element that must be proven to sustain a conviction for involuntary manslaughter." *State v. Torres*, 495 N.W.2d 678, 681 (Iowa 1993); *see also, e.g.*, *State v. Ayers*, 478 N.W.2d 606, 608 (Iowa 1991) ("The underlying public offense must be committed recklessly in order to form the basis of involuntary manslaughter."); *State v. Kernes*, 262 N.W.2d 602, 605 (Iowa 1978) ("Culpable conduct should require proof of recklessness."); *State v. Hoon*, No. 11-0459, 2012 WL 836698, at *3 (Iowa Ct. App. Mar. 14, 2012) (discussing recklessness element).

Our courts frequently have addressed the issue of what constitutes reckless conduct in the context of involuntary manslaughter. Two cases are worth discussing here. In *State v. Caldwell*, 385 N.W.2d 553, 556 (Iowa 1986), the defendant requested an instruction defining recklessness as "conduct creating a high and unreasonable risk of death and . . . that [the] defendant [was] aware of that risk." The court rejected the argument, concluding it was sufficient to show the defendant appreciated or should have appreciated some risk of harm. *See Caldwell*, 385 N.W.2d at 556.

The court revisited the issue of recklessness in *Torres*. *See* 495 N.W.2d at 681-82. In that case, the defendant physically abused his wife. *See id.* at 679-80. During the altercation, he swept a glass lamp off the night stand. *See id.* at 679. His wife fell on the broken glass and suffered a fatal cut to her left femoral artery and vein. *See id.* at 679-80. The court held there was insufficient evidence of recklessness. *See id.* at 682. In reaching that conclusion, the court explained that "[i]n [the] absence of a controlling statute, [it was] persuaded there should be but one standard of conduct applicable in these involuntary manslaughter cases." *Id.* at 681. The court then concluded:

> Simply put, for recklessness to exist the act must be fraught with a high degree of danger. In addition the danger must be so obvious from the facts that the actor knows or should reasonably foresee that harm will probably—that is, more likely than not—flow from the act.

*Id.* Justice Neuman dissented, recognizing the majority had "substantially departed from *Caldwell.*" *Id.* at 684-85 (Neuman, J., dissenting). We agree with Justice Neuman; the court did substantially depart from *Caldwell*. *See id.*

The majority opinion in *Torres* recognizes that criminal recklessness has two separate aspects: probability of harm and culpability for harm. *See id.* at 681-82. The first aspect relates to the defendant's generation of the risk of harm the law seeks to prohibit. *See id.* at 681. This requires a determination of whether the defendant's conduct was reckless in the sense that it increased the probability of causing the proscribed harm. *See id.* In the case of manslaughter, the proscribed harm is the unintentional death of another. *See id.* In *Torres*, the court stated that criminal liability will not attach to conduct increasing the

probability of the risk of harm unless the conduct made the proscribed harm "more likely than not" to occur. *See id.* The second aspect of recklessness relates to culpability for harm; that is, even if the defendant's conduct sufficiently increased the probability of causing the proscribed harm and the proscribed harm in fact occurred, was the defendant's disregard of the increased risk of harm sufficiently improper to warrant criminal sanction. *See Conner*, 292 N.W.2d at 684 (explaining that our case law requires the State prove the defendant acted recklessly as an element of manslaughter to ensure that the "gradation of culpability" within our homicide law is "commensurate with the gradation of punishment"). With respect to this second aspect of recklessness, our cases hold the State must prove the defendant had a "subjective awareness of the risk, although usually determined objectively." *Id.* By necessity, the culpability component of recklessness requires an assessment of whether the defendant appreciated the risk of death. *See id.* (stating the requirement the State prove the defendant had a subjective awareness of the risk of the proscribed harm distinguishes criminal liability from civil liability); Model Penal Code § 2.02(2)(c) ("A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct.").

With that in mind, we turn to the instructions given in this case. An instruction given without objection is the law of the case for purposes of our review as to the sufficiency of the evidence. *See State v. Canal*, 773 N.W.2d

528, 530 (Iowa 2009). The marshalling instruction given in this case included the required element of recklessness. Instruction No. 20 provided:

> The State must prove both of the following elements of Involuntary Manslaughter under Count 1:
> 1. On or about the 11th day of September, 2013, the defendant recklessly committed the crime of delivery of a controlled substance; to wit, Heroin.
> 2. When the defendant committed the crime, the defendant unintentionally caused the death of Daniel Hansen.
> If the State has proved both the elements, the defendant is guilty of Involuntary Manslaughter. If the State has failed to prove either of the elements, the defendant is not guilty of Involuntary Manslaughter.

Instruction No. 21 defined reckless as follows:

> A person is "reckless" or acts "recklessly" when he willfully disregards the safety of person or property. It is more than a lack of reasonable care which may cause unintentional injury. Recklessness is conduct which is consciously done with willful disregard of the consequences. For recklessness to exist, the act must be highly dangerous. In addition, the danger must be so obvious that the actor knows or should reasonably foresee that harm will more likely than not result from the act. Though recklessness is willful, it is not intentional in the sense that harm is intended to result.

We interpret these instructions to require the State to prove the defendant committed the underlying public offense in such a manner that it made it more likely than not the death of another would result and the defendant appreciated his commission of the public offense made it more likely than not that death of another would result. *See Torres*, 495 N.W.2d at 681 (stating the actor "knows or should reasonably foresee that harm will probably—that is, more likely than not—flow from the act"); *Conner*, 292 N.W.2d at 684 (stating the recklessness requires a "subjective awareness of the risk, although usually determined

objectively"); *Hoon*, 2012 WL 836698, at *3 (stating "recklessness is more than lack of reasonable care which may cause unintentional injury" (internal quotation marks and citation omitted)); *see also Clair v. State*, No. 2-03-507-CR, 2006 WL 496035, at *5 (Tex. Ct. App. Mar. 2, 2006) ("A person acts recklessly, or is reckless, with respect to the result of the person's conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that *the result* will occur." (emphasis added)); *People v. Cruciani*, 334 N.Y.S.2d 515, 521 (N.Y. Co. Ct. 1972) ("The distinction between reckless and criminally negligent conduct is not in the nature of the risk but rather in the mental state required for each. The reckless offender is aware of *the proscribed risk* and consciously disregards it. Knowledge on the part of the defendant is essential." (emphasis added)); Model Penal Code § 2.02(2)(c). This interpretation of the jury instruction reinforces the two aspects of criminal recklessness as discussed in *Torres. See* 495 N.W.2d at 681-82.

We next address the sufficiency of the evidence in light of the instruction given. The State seems to suggest that the delivery of heroin, without more, is always substantial evidence of recklessness. *See, e.g.*, *Commonwealth v. Perry*, 607 N.E.2d 44, 44 (Mass. 1993) (discussing inherent risk associated with heroin delivery); *Commonwealth v. Catalina*, 556 N.E.2d 973, 980 (Mass. 1990) (describing risks inherent to heroin distribution). We reject this per se or categorical approach.

First, such an approach is inconsistent with our case law regarding criminal recklessness. The mere delivery of heroin, without more, does not

necessarily establish a sufficiently material increase in the probability of the proscribed harm. More important, the per se approach is inconsistent with the culpability aspect of recklessness, in which the jury must determine whether the defendant had or should have had a "subjective awareness of the risk" such that his disregard of the increased risk warrants criminal sanction. *See Conner*, 292 N.W.2d at 684. Second, the per se approach is inconsistent with our general approach to criminal proceedings, which requires the State prove beyond a reasonable doubt each and every element of the offense:

> Thus, we reject both [Lofthouse's] proposition that furnishing controlled substances to one who subsequently dies from their ingestion can never support a conviction of criminal homicide and the Commonwealth's proposition that such will always support a conviction. Instead, we hold that guilt of criminal homicide, like any other offense, depends upon proof.

*Lofthouse v. Commonwealth*, 13 S.W.3d 236, 241 (Ky. 2000). Third, adopting a rule of strict liability for death resulting from delivery of a controlled substance is a policy decision best addressed by the legislature rather than the judiciary. *Cf.* Iowa Code § 123.47(7) (making it a felony offense to supply alcohol to a minor which results in the death of any person); *State of Rohm*, 609 N.W.2d 504, 513 (Iowa 2000) (concluding section 123.47(7) did not require proof of recklessness); *see* N.J. Stat. Ann. § 2C:35-9(a) (West 2015) ("Any person who manufactures, distributes or dispenses . . . any other controlled dangerous substance classified in Schedules I or II, or any controlled substance analog thereof, . . . is strictly liable for a death which results from the injection, inhalation or ingestion of that substance."); *State v. Mauldin*, 529 P.2d 124, 126 (Kan. 1974) (concluding the

legislature regulates classes of items, and the judiciary should not extend liability under the felony murder rule for death as a result of a controlled substance). Fourth, the categorical approach is inconsistent with our case law in the area.

We have twice evaluated the sufficiency of the evidence supporting convictions for involuntary manslaughter where the victim's death was caused by the ingestion of controlled substances. In *Hoon*, the defendant was charged with involuntary manslaughter for reckless delivery of methadone. We affirmed the defendant's conviction. *See* 2012 WL 836698, at *8. We noted several facts establishing the defendant had a subjective appreciation that delivery of a controlled substance more likely than not would cause the death of the victim. *See id.* at *3-4. First, the defendant was a recovering addict and had a personal appreciation for the risk of methadone use. *See id.* at *4. The defendant and the victim were related, and the defendant knew the victim was "messed up" and visibly "high" at the time of delivery. *See id.* The defendant also knew of the victim's substance abuse history. *See id.* The evidence also showed the defendant knew the victim was making "desperate and persistent efforts to obtain the pills" and the victim "would likely take them immediately and without moderation." *Id.* These facts established both that Hoon's conduct recklessly increased the probability of death and that Hoon was sufficiently aware of the increased risk of overdose and death above and beyond the mere delivery of the controlled substance such that criminal penalty was warranted. *See id.*

In *State v. Block*, No. 99-1242, 2000 WL 1587760, at *1 (Iowa Ct. App. Oct. 25, 2000), the defendant was charged with involuntary manslaughter after

the defendant delivered Xanax and methadone pills to teenaged boys, one of whom died after ingesting a combination of pills. This court affirmed the defendant's challenge to her conviction, finding there was sufficient evidence to establish recklessness. *See Block*, 2000 WL 1587760, at *2-3. As in *Hoon*, the defendant was a substance abuser and had personal experience with the drug, which "render[ed] her conduct in giving the pills to the boys more rather than less reckless." *Id.* at *3. None of the boys to whom the defendant delivered the drugs had taken methadone before, alone or in combination with Xanax. *See id.* The court noted the defendant was with the boys the entire time they were using the substances and "knew precisely how many pills they had taken." *Id.* She also knew the combination of pills the boys had taken. *See id.* Finally, the court explained the defendant was able to personally "observe the effects of the drug" on the victim. *See id.* Thus, as in *Hoon*, there was evidence establishing an increased risk of death and the defendant's awareness of an elevated risk of overdose and death beyond mere delivery of the controlled substance. *See id.*

In this case, even when viewing the facts in the light most favorable to the verdict, there is insufficient evidence establishing either aspect of recklessness. There was no evidence regarding the quality of the substance sold or Miller's knowledge of the same from which the jury could infer a greater likelihood of death. There was no evidence showing Miller had any knowledge of Hansen's medical conditions. There was no evidence Miller was aware Hansen and Delong had been drinking prior to or in combination with ingesting the heroin.

Delong testified she and Hansen were at Miller's residence for only five minutes. Unlike *Hoon*, there was no evidence establishing Hansen's use was so frequent he presented an elevated risk of overdose. *See Hoon*, 2012 WL 836698, at *3-4. Delong testified that she and Hansen had used only once per week for a short period of time. Unlike *Block*, Miller was not present when Hansen and Delong ingested the heroin, and Miller thus had no knowledge of how the heroin was ingested and in what quantity. *See Block*, 2000 WL 1587760, at *2-3. Finally, there was no evidence establishing the probability of heroin overdose. Delong testified she and Hansen had used several times before without issue. She testified she did not believe heroin was dangerous or that death was a possibility. There was some testimony, including from Dr. Firchau, that he had seen a few more instances of heroin overdoses in the Quad Cities area, but he was unable to quantify any exact amount. In other words, there was no evidence establishing it was "more likely than not" that Hansen's death would result from Miller's conduct or that Miller had a subjective appreciation of the risk of death.

This case is more similar to the *Lofthouse* case in which the Kentucky Supreme Court rejected the per se approach and reversed the defendant's conviction for manslaughter. *See* 13 S.W.3d at 241-42. We quote from it at length:

> [Lofthouse's] conviction of reckless homicide in the case s*ub judice* required proof beyond a reasonable doubt that there was a substantial and unjustifiable risk that [the victim] would die if he ingested the cocaine and heroin furnished to him by [Lofthouse], and that the risk of [the victim's] death was of such nature and degree that [Lofthouse's] failure to perceive it constituted a gross deviation from the standard of care that a reasonable person would observe in the situation, . . . ; *i.e.*, that [the victim's] death as a

result of ingestion of the cocaine and heroin was either foreseen or foreseeable by [Lofthouse] as a reasonable probability . . . . Thus, the Commonwealth needed to prove not only the toxic qualities of cocaine and heroin, but also that a layperson, such as [Lofthouse], should reasonably have known that there was a substantial risk that the amount of cocaine and heroin ingested by [the victim] would result in his death. That is especially true where, as here, [Lofthouse] did not directly cause the victim's death, but only furnished the means by which the victim caused his own death. In the Pennsylvania case of *Commonwealth v. Bowden*, [309 A.2d 714 (Pa. 1973)], evidence that the defendant injected the victim with the fatal dose of heroin was held insufficient to support a homicide conviction because it was undisputed that the defendant knew the victim's tolerance level for heroin and injected only an amount which the victim had normally tolerated.

Although the medical examiner in our case testified that the amount of morphine found in [the victim's] body "can be fatal" and that the amount of cocaine found in his body "could be fatal," there was no proof that [Lofthouse] or any other layperson should have been aware that there was a substantial risk that [the victim] would die from ingesting those substances, or that [Lofthouse's] failure to perceive that risk constituted a gross deviation from the standard of care that a reasonable person would observe in the situation. Such information is not "common knowledge." On the other hand, there was evidence that heroin was "something new" to [Lofthouse]; that he, himself, had previously ingested dosages of both the cocaine and the heroin in question without a fatal result; and that he, himself, ingested the same dosages of cocaine and heroin as [the victim] on the same occasion, yet remained coherent enough to assist in efforts to save [the victim's] life. The Commonwealth proved only that the dosages were fatal to [the victim]. That alone was insufficient to convict [Lofthouse] of reckless homicide.

*Lofthouse*, 13 S.W.3d at 241-42. These are the same types of considerations that informed our opinions in *Hoon* and *Block*. *See Hoon*, 2012 WL 836698, at *3-4; *Block*, 2000 WL 1587760, at *2-3. These same considerations also highlight the absence of evidence of recklessness in this case.

III.

Because we conclude there was insufficient evidence to support the verdict, we remand this matter and direct the court to enter a judgment of

acquittal on that count.  As a result, we need not address the remainder of the defendant's arguments on appeal.

**REVERSED AND REMANDED.**

Tabor, J., concurs; Vogel, P.J. dissents.

**VOGEL, J.** (dissenting)

I respectfully dissent from the majority's conclusion the State failed to show Miller acted "recklessly" when he sold the doses of heroin to Hansen and Delong.

Because the jury found Miller guilty of involuntary manslaughter, that finding of guilt is binding upon us unless we determine there was not substantial evidence in the record to support such a finding.  *State v Torres*, 495 N.W.2d 678, 681 (Iowa 1993).  To make a substantial evidence determination, we view the record evidence in the light most favorable to the State.  *Id.*

A person will be found guilty of involuntary manslaughter under Iowa Code section 707.5(1) (2013) if the State proves beyond a reasonable doubt a "person unintentionally causes the death of another person by the commission of a public offense."  Of course, the public offense here was the delivery of heroin under Iowa Code section 124.401(1)(c).  We have incorporated from common law into our case law "recklessness" as a necessary element of proof for involuntary manslaughter.  *State v. Kernes*, 262 N.W.2d 602, 605 (Iowa 1978) ("Culpable conduct should require proof of recklessness, that is, conduct evidencing either a willful or wanton disregard for the safety of others.").  The "culpability of a person's unintentional death-causing conduct must still be weighed in light of all surrounding facts and circumstances, the activity he or she engaged in at the relevant time, and the inherent risk to others of the activity or instrumentalities involved."  *Id.* The jury was instructed on the definition of recklessness:

> A person is "reckless" or acts "recklessly" when he willfully
> disregards the safety of person or property.  It is more than a lack

of reasonable care which may cause unintentional injury. Recklessness is conduct which is consciously done with willful disregard of the consequences. For recklessness to exist, the act must be highly dangerous. In addition, the danger must be so obvious that the actor knows or should reasonably foresee that harm will more likely than not result from the act. Though recklessness is willful, it is not intentional in the sense that harm is intended to result.

The jury was then given the marshalling instruction which read:

1. On or about the 11th day of September, 2013, the defendant recklessly committed the crime of delivery of a controlled substance; to wit, Heroin.
2. When the defendant committed the crime, the defendant unintentionally caused the death of Daniel Hansen. If the State has proved both the elements, the defendant is guilty of Involuntary Manslaughter. If the State has failed to prove either of the elements, the defendant is not guilty of Involuntary Manslaughter.

Under these instructions I believe a reasonable juror would and did conclude, beyond a reasonable doubt, that the delivery of three bindles or doses of heroin to two people, Hansen and Delong, was reckless.

Evidence presented at trial highlighted the danger of heroin. Although Delong testified she did not believe heroin was dangerous before these events, we do not use the subjective standards of those involved in the incident. *See State v. Bash,* 670 N.W.2d 135, 137 (Iowa 2003). Rather, we examine the record to determine if a rational fact finder could be convinced. *Id.* The majority concludes that the evidence presented at trial is too thin to fulfill the test; I disagree. Testimony at trial showed *any amount* of the drug is potentially fatal, and in the previous year, the number of deaths from heroin overdoses had been increasing in the area. As Dr. Firchau testified: "When dealing with illicit substances, specific drug concentrations, potentially fatal or toxic concentrations

are less useful and less important because it is widely believed and accepted that any potential amount of those substances can be potentially fatal" and "heroin at any level in the system can be potentially fatal." Thus, a reasonable jury would have started its deliberations with the notion that dealing in heroin—in any amount—is "highly dangerous." *See, e.g.*, *Commonwealth v. Catalina*, 556 N.E.2d 973, 980 (Mass. 1990) (noting Congress has "placed heroin in the most dangerous category of controlled substance"). There is no "safe dose" of this schedule one narcotic. *See id.* (stating heroin "lacks accepted safety for use even under medical supervision"). Federal law has noted the danger inherent in heroin as well. 21 U.S.C. § 812(b)(1), 812(c) (2012). Wisconsin has even taken the step to statutorily criminalize the delivery of schedule I controlled substances resulting in death. Wis. Stat. § 940.02(2). Courts in Georgia have held that the felony-murder rule applies in similar situations. *Hulme v. State*, 544 S.E.2d 138, 141 (Ga. 2001). While Iowa has not determined, either through legislation or case law, that dealing heroin is *per se* reckless, the very act of selling a schedule I narcotic, knowing it will be ingested, is unquestionably inherently dangerous.

In this case, Delong testified, she and Hansen had "a few drinks" before approaching Miller for some heroin. Miller then sold three doses of the drug to the two users—150% of the packaged, standard dosage. Selling an excessive amount of an inherently dangerous substance raised the risk of overdose. I would conclude, the combination of the inherently dangerous nature of heroin, the increase of overdoses in the area, the testimony that any amount of heroin is potentially fatal, and the excessive amount sold to Hansen and Delong by Miller

was sufficient to prove the element of recklessness. A reasonable juror, following the recklessness instruction provided, would have found that Miller's actions, in selling a large quantity of heroin to two people, "willfully disregarded the safety" of Hansen and Delong; it was "done with willful disregard of the consequences"; "the act was highly dangerous"; and the danger was so obvious that Miller knew or should have reasonably foreseen "that harm will more likely than not result from" the sale. *See* Jury Instruction No. 21.

Therefore, viewing the evidence in the light most favorable to the State, I submit substantial evidence supported the jury's findings that Miller acted recklessly when he sold the three doses of heroin to two people—Hansen and Delong. I would affirm Miller's conviction.